## Sloan, Appellant, *v.* Brown et al.

*Sales—Principal and agent—Limitations on authority—Shares of stock.*

1. Where a pledgee or purchaser takes stock with notice of the capacity in which an agent holds, he cannot deny the right of the principal therein.

2. A purchaser of shares of stock from a known special agent is bound to ascertain the nature and extent of the agent's authority, and is not entitled to rely upon the agent's possession of a certificate, with an assignment and power of attorney to transfer, and a telegram

from the principal containing the expression "if you can't sell, borrow." Wood's App., 92 Pa. 379, distinguished.

3. If in such a case the purchaser, with full knowledge of the ownership of the stock, pays ten cents a share for it, when inquiry would have shown him that the agent had been instructed to sell it to another party for fifty cents a share, equity will compel him to reassign the stock to the owner upon repayment of the amount paid to the agent with interest.

Argued March 21, 1910. Appeal, No. 30, Oct. T., 1910, by plaintiff, from decree of C. P. No. 4, Allegheny Co., Second T., 1909, No. 297, dismissing bill in equity in case of John Sloan in the hands of the Fidelity Title & Trust Company, of Pittsburg, Committee, v. James E. Brown and Richard R. Brown, individually and partners, doing business as Morris Brown & Company, and San Toy Mining Company and Guarantee Title & Trust Company of Pittsburg. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Bill in equity to compel return of certain shares of stock. Before SWEARINGEN, P. J.

The facts appear in the opinion of the Supreme Court.

*Error assigned* was decree dismissing bill.

*John M. Freeman*, of *Watson & Freeman*, with him *Robert Woods Sutton*, for appellant.—The fact that plaintiff left the stock certificate and a stock power signed in blank in the possession of an agent, is no defense to this action, the defendants having actual knowledge that the plaintiff and not the agent was the owner of the stock: Westinghouse v. German Nat. Bank, 188 Pa. 630; s. c., 196 Pa. 249; Ryman v. Gerlach, 153 Pa. 197; Shattuck v. Cement Co., 205 Pa. 197; Mellon Nat. Bank v. Bank, 226 Pa. 261; Patterson v. Neal, 135 Ala. 477 (33 So. Repr. 39).

*Thomas Patterson*, of *Patterson, Sterrett & Acheson*, with him *J. H. Painter* and *J. C. Slack*, for appellees.—

Where one is in possession of a certificate with an assignment and power of attorney to transfer such certificate duly signed by the person in whose name the certificate has been issued, such one has full power to pass good title to such stock, although every one connected with the transaction knows perfectly well that the one holding the certificate and power to transfer is not the owner, and does not claim to be the owner of the stock: Wood's App., 92 Pa. 379; McNeil v. Bank, 46 N. Y. 325; Merchants' Bank v. Livingston, 74 N. Y. 223.

OPINION BY MR. JUSTICE POTTER, July 1, 1910:

In the bill of complaint filed in this case the plaintiff alleged that the defendants had purchased from one Frederick W. Ward at much less than the real value thereof, 261,112 shares of stock of the San Toy Mining Company, which they knew belonged to plaintiff; that said Frederick W. Ward had no authority to make such sale, and defendants knew that he had not; that plaintiff had demanded the return of the stock, having tendered to the defendants the amount which they paid for it, together with interest thereon. Plaintiff therefore prayed for an injunction to restrain the transfer of the stock on the books of the corporation; for a decree finding that the defendants held the said shares of stock as trustee for the plaintiff, and directing them to return and transfer to the plaintiff the said stock on payment to them of the amount paid by them therefor, with interest.

The court below was of the opinion that the fact that the plaintiff left the certificate of stock in the possession of Ward, together with the stock power signed in blank, protected the defendants in purchasing the stock from Ward, and relieved them from the burden ordinarily placed upon those dealing with a special agent, of inquiring into the nature and extent of his authority. The bill was therefore dismissed. The facts of the transaction are not in dispute. Sloan and Ward became in-

terested in the purchase of shares in a lumber company, and Ward was to advance the money for certain payments. Sloan went to British Columbia to examine timber tracts. Before leaving, in order to secure Ward for the advances he was to make for Sloan's share in the deal, Sloan left with Ward a certificate for 261,112 shares of San Toy Mining Company, with a power of attorney to transfer the stock, signed in blank. Ward was unable to make the payments, as he had agreed to do, and he used the certificate of stock as collateral security for the sum of $9,000, borrowed from the firm of A. E. Masten & Company. The latter used the power of attorney, and had the stock transferred to themselves and a new certificate issued in their own name; so that Sloan's stock in the San Toy Company then stood in the name of A. E. Masten & Company, and was pledged to them for the payment of the sum of $9,000, borrowed by Ward. In order to complete the timber deal, the payment of considerable more money was required. Ward being unable to keep his agreement to provide the money, telegraphed to Sloan for advice. Sloan replied by wire, "If necessary sell Schwab hundred thousand San Toy or more fifty or better." At the same time he telegraphed R. R. Brown, one of the defendants, "Will you lend me $25,000 on 261,112 shares San Toy stock see Frederick Ward." The next day he wired Ward to see Dick Brown about loans. On July 21, 1908, Ward telegraphed Sloan that he was unable to sell to Schwab, and asked further advice. On July 27, Sloan wired from British Columbia, "Just returned Graham Island wonderful property if can't sell borrow all you can on stock Dick Brown see William Shannon Wednesday try extend part." Ward then went to defendants. He first saw R. R. Brown who referred him to James E. Brown. These gentlemen were at the time respectively treasurer and vice president of the San Toy Mining Company. They knew the stock in question belonged to Sloan, and inquiry was made of Ward by James E. Brown as to his authority to sell.

Ward replied that he had authority to sell the stock; that he had the certificate with power of attorney to transfer, and showed the telegram last above quoted. Defendants did not pursue the inquiry as to Ward's authority any further, but apparently relied upon Ward's possession of a certificate, with an assignment and power of attorney to transfer. As a matter of fact, as above noted, at that time the certificates had been assigned to A. E. Masten & Company and surrendered, and a new certificate made out in the name of Masten & Company. James E. Brown then made an offer of ten cents per share for the stock. Ward took a little time to consider, consulted with his attorneys, and showed them the two telegrams; one authorizing him to sell to Schwab at fifty cents per share or better, and the other saying, "If can't sell borrow all you can on stock Dick Brown;" and was advised by his attorneys that these telegrams did not authorize him to sell the stock to Brown at ten cents per share. Disregarding this advice, however, Ward accepted the bid of James E. Brown for the stock; had Masten & Company surrender the certificate, and used the proceeds to make a payment upon the lumber deal in which he was interested with Sloan. The trial judge held that the delivery of the certificate by plaintiff to Ward, with power of attorney to transfer, authorized Ward to sell the stock as though it were his own, at any price he deemed fit. He relied upon Woods' App., 92 Pa. 379, as authority for this ruling. We think he misapprehended the ground upon which that case was decided. In Woods' Appeal the pledgees of the stock did not know that the brokers who pledged it were not the owners, and the decision was put squarely upon that ground, Mr. Justice Trunkey saying (p. 393): "The defendants had no knowledge of the collusive transaction between the executor and McDowell & Wilkins (the brokers and pledgors), nor reason to believe that they, the pledgors, were not the real owners, as they appeared." From the master's report in that case (p. 382) it seems

that the defendant testified that he dealt with them (the pledgors) as principals, not as agents, and that he had no doubt, or reason to doubt, that the certificates were their property when he received them. In the present case, the facts are quite to the contrary; the Browns dealt with Ward as an agent, not as a principal, and knew that the stock belonged to Sloan.

The proper distinction to be made in such cases, is pointed out in the opinion by Mr. Justice DEAN in Ryman v. Gerlach, 153 Pa. 197 (205), where, referring to Woods' Appeal, he shows that the purchasers of the stock in that case were protected as "innocent strangers." And he points out that if they were not such, and "if they knew the securities credited to Bodmer were in fact Ryman's, then the sale of them without authority from either Bodmer or Ryman was a wrongful conversion for which they are answerable." And he went on to say, "Nor is there any reason, founded on the peculiar necessities of stock dealing, why brokers should not be held to the observance of the same rule of morals and law as men engaged in other avocations." This distinction was accurately preserved and followed in Westinghouse v. German Nat. Bank, 188 Pa. 630. There the plaintiff deposited stock with a broker as security for certain stock operations he was carrying on. He gave the broker three certificates with a power of attorney on the back of each duly executed by him. The broker without the knowledge or consent of his customer pledged the certificate with a bank as collateral security for his own indebtedness to the bank. The bank knew, when the stock was pledged, that it belonged to the plaintiff and not to the broker. The plaintiff filed a bill in equity against the bank to compel the surrender of the certificates to him. The court below entered a decree in his favor, which was affirmed by this court, in an opinion by Mr. Justice DEAN, in which he said (p. 633): "The German National Bank, when it accepted the stock as collateral security on Lawrence's general credit account,

had full knowledge that they belonged to Westinghouse; and so far as the record shows, it also knew Lawrence had not the consent of Westinghouse to repledge them. This knowledge on the part of the bank is affirmatively proved. It would not have been implied, had nothing more appeared than the fact that Lawrence, the apparent owner, had pledged them for his own account. Westinghouse had put it in the power of his broker to do this, and would not have been heard to complain. But when the bank actually knew, notwithstanding what appeared on the certificates, that the ownership was still in Westinghouse, it was bound to inquire of the owner, whether there was authority in the broker to repledge. Not having done so, it cannot now claim that the owner's right is barred. It is so held by all our cases." And in strict consistency with the principle thus declared, in the subsequent case of Westinghouse v. German Nat. Bank, 196 Pa. 249, where it was not shown that the bank had knowledge that the stock pledged was not owned by the broker, it was held that the owner was not entitled to recover it from the bank.

We think the principle is sound and well established, that where a pledgee or a purchaser takes stock with notice of the capacity in which the agent holds, he cannot deny the rights of the principal therein. "A person buying stock from an agent, with knowledge that the latter is acting as agent, is bound to inquire into the scope of his authority:" 1 Cook on Corporations (6th ed.), sec. 351. "Every person dealing with an agent is bound to ascertain the nature and extent of his authority. He must not trust to the mere presumption of authority, nor to any mere assumption of authority by the agent. He must at all times be able to trace the authority home to its source. Keeping within the scope of that authority he is safe and cannot be affected by secret instructions of which he was ignorant. But if he had knowledge of the instructions, or notice sufficient to put him upon an inquiry by which they might have been dis-

covered, he will be held bound by them:" Mechem on Agency, 289.

The defendants here, having dealt with Ward as an agent, and not as a principal, were bound to inquire into the nature and extent of his authority. They did so to a limited extent, and what they admittedly learned, was quite sufficient to put them upon notice of the limitations upon that authority. The telegram shown by Ward indicated upon its face some prior instruction to him. The expression "If can't sell, borrow," implied that some price at which to sell had been fixed. Inquiry would have disclosed at once the fact that this limitation was fifty cents per share, to Schwab. No other authority to sell had apparently been given to Ward. We agree with the court below, that under the facts found, there is nothing to justify a conclusion that the plaintiff was guilty of laches. It appears that defendants admitted the jurisdiction of the court, and made no denial of their ability to return the stock. The evidence and findings of fact show that the sale was made to James E. Brown individually, rather than to the firm of Morris Brown & Company. No suggestion is made by counsel for appellee that a decree against James E. Brown for the return of the stock cannot be enforced. We are of opinion that under the established rule of law, as applied to the facts of this case, the plaintiff is entitled to the relief for which he prays, and that he should have a decree for the restoration of the 261,112 shares of stock, upon the repayment of the amount paid to Ward therefor, with interest.

The decree of the court below is reversed, and the bill of complaint is reinstated, and it is ordered that the record be remitted to the court below, for the entry of a decree in favor of the plaintiff, as herein indicated.