## NOWATA OIL SYNDICATE v. COMMERCIAL NAT. BANK (COWDERY, Interpleader).

No. 11732—Opinion Filed Oct. 16, 1923.

**1. Principal and Agent—Contracts by Agent—Binding Effect.**

Ordinarily a principal is bound by a contract made for him by his agent, and the acts of his agent in reference thereto, while the agent is acting in the course of his employment and within the scope of his actual or apparent authority.

**2. Same — Authority of Agent — Duty of Third Party to Ascertain.**

It is incumbent upon a person dealing with an alleged agent to discover, at his peril, whether the assumed agency be general or special, that such pretended agent had authority, and that such authority is in its nature and extent sufficient to permit him to do the proposed act.

**3. Same — Ratification by Principal.**

Ratification must be with full knowledge of all the facts. In order that a ratification of an unauthorized act or transaction of any agent may be valid and binding, it is essential that the principal have full knowledge, at the time of the ratification, of all the material facts relative to the unauthorized transaction.

**4. Same.**

The rule as to ratification is applicable only where the act, alleged to have been ratified by another, purported to have been for or in behalf of such other.

**5. Same—Authority of Agent and Ratification—Lack of Evidence.**

The record examined, and held, that there is no evidence to show that the alleged agents who executed the contract sued upon were acting in the course of their employment and within the scope of their actual or apparent authority, or that the acts of such agents were ratified by their principal.

(Syllabus by Jarman, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Nowata County; C. W. Mason, Judge.

Action by the Nowata Oil Syndicate against the Commercial National Bank, defendant, in which C. C. Cowdery, interpleads. Judgment for the interpleader, and plaintiff brings error. Judgment of the lower court is reversed and remanded.

A. B. Campbell, for plaintiffs in error.

Schwabe & Raymond, for the Commercial National Bank.

Bert Van Leuven, for C. C. Cowdery.

Opinion by JARMAN, C. This action was commenced by the Nowata Oil Syndicate, a copartnership composed of C. W. Eastman, A. L. Sealander, L. A. Lang, W. R. Avery, J. Martin, Earl White, W. H. Kind, W. W. Garwood, Paul Smith, C. L. Sloan, J. H. Burris, M. Leitner, R. M. Umstott, R. E. Young, N. C. Nyhagen, and John McDonald, as plaintiffs, against the Commercial National Bank, a corporation, as defendant, to recover judgment for $1,500 deposited in escrow with said bank; C. C. Cowdery filed an interplea, setting up that he was the owner and entitled to recover and to be paid out of said $1,500 the sum of $1,415.17 for drilling an oil well for the plaintiff. The case was tried to a jury and a verdict was returned in favor of C. C. Cowdery, interpleader, for the sum of $1,415.17, and judgment was rendered by the court accordingly, from which the plaintiffs bring error.

Among the grounds enumerated by plaintiffs for reversal of this cause, they urge that the demurrer of plaintiffs to the evidence of the interpleader should have been sustained, and that the court should have directed a verdict for the plaintiffs; that the evidence is not sufficient to support the verdict of the jury and the judgment of the court rendered thereon.

The evidence in this case discloses that the Nowata Oil Syndicate is a copartnership, composed of the persons hereinabove named, and that its headquarters and principal place of business are at Denver, Colo.; that at some date, the exact time not being definitely fixed, prior to the transactions hereinafter referred to, said Nowata Oil Syndicate was organized, and purchased a certain oil and gas lease located in section 4, township 26 north, range 16 east, Nowata county, Okla., and known as the Clarence R. Rowley lease, from Geo. C. Waterman, and that it was agreed, as part of the contract, when plaintiffs purchased said lease from Waterman, that Waterman was to superintend the drilling and bringing in of wells that were to be drilled on said lease as said Waterman was an experienced oil man. The plaintiffs decided to drill a well on the Rowley lease and deposited $1,500 in the City Bank & Trust Company of Denver, Colo., to be forwarded to the Commercial National Bank of Nowata, Okla., and there to be held in escrow for the purpose of defraying the expenses of drilling a well on said Rowley lease, and on April 19, 1918, the City Bank & Trust Company of Denver, through its secretary, R. A. Brown, pursuant to instructions given by the plaintiffs, forwarded said $1,500 in a letter of instructions as to the disposi-

tion of said funds, to the Commercial National Bank of Nowata. Said letter of instructions being as follows, to wit:

"The City Bank and Trust Co.
"Capital $100,000.00,
"Seventeenth at Arapahoe Street
"Denver, Colo.
"April 17, 1918.

"Commercial National Bank,
"Nowata, Oklahoma.

"Gentlemen:

"Enclosed find cashier's check for $1,500 endorsed to you, and you are authorized to place this money in escrow in your bank together with a drilling contract for the drilling of an oil well on the northwest quarter of the southeast quarter, and the northwest quarter of the northeast quarter of the southeast quarter of section 4, tp. 26, N. R. 16 east, Nowata county, state of Oklahoma, commonly known as the Clarence R. Rowley tract.

"Said drilling contract to be in the usual and customary form for drilling contracts in your county. Said escrow agreement and drilling contract to be approved by Paul F. Smith and George C. Waterman, now at the Carey Hotel in Nowata, Oklahoma.

"Yours very truly,
"R. A. Brown,
"Secretary."

These funds were received by the Nowata bank on April 20, 1918. Geo. C. Waterman, above named, was in Nowata some time prior to the sending of the $1,500 to the Nowata bank. During the latter part of March, 1918, Waterman negotiated with C. C. Cowdery, interpleader, with reference to drilling a well on a tract of land in section 9, township 26 N., range 16 east, Nowata county, Okla., known as the Frank Randall tract, and on April 4, 1918, Waterman and Cowdery entered into a written contract for the drilling of a well on the Randall lease, said contract being executed by Waterman and Cowdery, individually, and signed by Geo. C. Waterman as party of the first part, and C. M. Cowdery as party of the second part. Said contract provided that Cowdery, who was to drill the well, was to be paid $1.35 per foot, and the sum of $1,200 was to be deposited in the Commercial National Bank of Nowata, along with a copy of their contract, to pay for the drilling of said well. Cowdery began the drilling of said well on the Randall lease on April 12, 1918, and after drilling a few days, he made inquiry of the bank as to whether Waterman had deposited funds there sufficient to, or for the purpose of, paying for the drilling of said well, and upon being advised by the bank that such funds had not been so deposited, Cowdery

said that he would not drill in the well under such circumstances, and was called by the Carey Hotel at Nowata where Waterman was staying, this being April 20, 1918, and Waterman then advised Cowdery that the funds had arrived about an hour ago in the form of a draft for $1,500 at the Commercial National Bank, and Cowdery later went by the bank and made inquiry as to whether funds had been received there for Waterman, and upon being advised by the bank that such funds had been received, and being shown by the bank the cashier's check for said funds, Cowdery then delivered to the bank a copy of the drilling contract he had entered into with Waterman and the same was placed, with the $1,500 and the letter of instructions, in escrow. Cowdery did not see nor read the letter of instructions to the bank, and the bank officials did not, at this time, read or examine the drilling contract entered into between Cowdery and Waterman. Cowdery then resumed drilling on said well and completed the same on April 26, 1918. Paul F. Smith, a member of the partnership, Nowata Oil Syndicate, went to Nowata from Denver, his home, during the latter part of March, 1918, to look after the Rowley lease, owned by said Nowata Oil Syndicate. Smith arrived on Sunday morning and met Waterman at the Carey Hotel and, later in the day, upon invitation of Waterman, Smith accompanied Cowdery, Waterman, and a driller by the name of Brown, in an automobile to the Randall lease and on the same trip they visited the Rowley lease. This trip was arranged by Waterman on the preceding day. At the time of this trip the agreement had been made between Waterman and Cowdery for the drilling of the well on the Randall lease, but Smith had no part in making said contract, and the record does not disclose that he knew anything about such contract, and nothing was said by Smith to Cowdery, nor by Cowdery to Smith at the time of this visit to the well, or prior thereto, with reference to a contract for the drilling of the well on the Randall lease. Smith was a stockholder in the Compensation Oil Company, which owned the Randall lease, and Waterman was the manager for the Compensation Oil Company. A sum of $5,000 had been provided for and raised by the Compensation Oil Company to be used by Waterman for the purpose of drilling on the Randall lease. The Nowata Oil Syndicate was not interested in any way in the Randall lease, nor in the Compensation Oil Company, and no member of this partnership was interested in said Compensation Oil Company, or the Randall lease, except Smith,

and the Nowata Oil Syndicate knew nothing about, and had nothing to do with, the contract entered into between Waterman and Cowdery for the drilling of a well on the Randall lease. On April 20, 1918, Cowdery called by the bank to ascertain whether funds had been deposited by Waterman to defray the expense of the drilling of the well, and finding that such had not been done, he thereupon suspended drilling and went by the Carey Hotel to see Waterman relative to the matter, and found Smith there at the time. After Cowdery had left the bank, making inquiry for such funds, and went to the hotel to see Waterman about it, Waterman then, in the presence of Smith, handed Cowdery a drilling contract to be executed for drilling a well on the Rowley lease, and Cowdery, upon observing this, stated that he had not agreed to drill a well on the Rowley lease and Mr. Smith then spoke up and said, "Well, just let the Rowley go for now, Mr. Waterman," and nothing further was said about drilling on the Rowley lease at the time, and Cowdery then went by the bank and deposited there a copy of the contract he had made with Waterman, as hereinbefore stated. Smith and Waterman were together frequently and made frequent visits together to the Randall lease during the time the well was being drilled, and also made frequent visits to the Commercial National Bank. Waterman and Smith, both prior to and after the $1,500 and the letter of instructions had been received. at the bank, called there to make inquiry as to whether any funds had arrived for them. After the funds had arrived, and after Cowdery had deposited a copy of his contract, Smith was in the bank and upon being shown the papers in escrow, discovered this contract between Cowdery and Waterman and protested against its being placed with the other papers, stating to the bank that said contract had nothing to do with the $1,500 or the letter of instructions. Waterman wanted to pay Mr. Cowdery for the drilling of the well on the Randall lease out of the $1,500 on deposit in the bank, but Smith objected to this being done, and the funds were not released by the bank to Cowdery or to Waterman. After Cowdery was refused payment out of this $1,500, he brought suit in the district court of Nowata county against Waterman and the Commercial National Bank to recover on his contract for the drilling of said well, and made a Mr. Rosen, who was holding the title of said lease, as trustee for the Compensation Oil Company, a defendant to said suit, and after this suit was filed by the plaintiff for said $1,500, Cowdery filed his interplea herein. No contract was ever executed

or delivered to the bank approved by Smith and Waterman for the drilling of a well on the Rowley lease, and no contract of any nature was entered into for the drilling of a well on the Rowley lease. The plaintiffs, after these developments, made demand on the bank for the return of the $1,500. which was refused for the reason that said fund was being claimed also by Cowdery, and the bank filed its answer in this cause setting up this contention, and tendered said sum into the court for the party rightfully entitled thereto. as might be found by the judgment of the court. After Cowdery completed drilling the well on the Randall lease, and prior to the filing of this action by the plaintiffs, Smith, on behalf of the plaintiffs, attempted to employ Cowdery to drill a well on the Rowley lease but Cowdery refused to consider this proposition for the reason that he could not afford to move his machinery across the river on the Rowley lease to drill just one well for the plaintiffs.

Counsel for the interpleader, Cowdery, contend that the facts in this case, with the presumptions and inferences to be drawn therefrom, are sufficient to establish the fact that Waterman and Smith were the agents of the plaintiffs, Nowata Oil Syndicate, in their negotiations with said interpleader with reference to drilling the well on the Randall lease, and that the jury was justified from the evidence in finding that Waterman, in executing the contract for the drilling of the well on the Randall lease, did so as the agent of the plaintiffs. This action was tried in the lower court by the interpleader on the theory that Waterman and Smith were the agents of the plaintiffs in the matter of making a contract with said interpleader for the drilling of the well on the Randall lease. If Waterman were the agent of the Nowata Oil Syndicate in the making of this contract with Cowdery to drill a well on the Randall lease, and as it is not necessary for this court to determine this question in disposing of this appeal, we make no finding on this proposition, still there is no evidence to show that Waterman, acting as such agent, was acting within the scope or apparent scope of his authority.

The letter of instructions which was transmitted by the plaintiffs through the City Bank & Trust Company of Denver to the Commercial National Bank of Nowata was clear as to the authority and circumstances under which this money was to be paid out. This money was deposited by the plaintiffs and was being held by the Commercial National Bank of Nowata for the purpose of paying for the drilling of a well on the Row-

ley lease, which was in section 4, township 26 N., range 16 E. No well was drilled on this land at all, but instead, there was a well drilled in an entirely different section, being section 9 of township 26 north, range 16 E. The plaintiffs had no interest whatever in this land located in section 9 where the well was drilled by Cowdery, and if Waterman and Smith were the agents of the Nowata Oil Syndicate, there is no evidence produced here to show that they were acting within the scope of their authority or within the apparent scope of their authority, in entering into the contract with Cowdery to use the money of the plaintiffs in drilling a well on land in which they had no interest. An agent cannot bind his principal just on the mere fact that he is an agent, but in acting, he must do so within the scope, or apparent scope, of his authority; an unauthorized act of an agent will not bind his principal. The interpleader bases his right to recover against the plaintiffs on the grounds that Waterman and Smith were the agents of the plaintiffs in making this drilling contract, and, therefore, the burden of proving such agency and the nature and extent thereof rests upon the interpleader; in other words, it was incumbent upon the interpleader to prove, not only that Waterman and Smith were agents of the plaintiffs, but that they had authority to make this contract for the drilling of a well on the Randall lease for, and in behalf of, the plaintiffs; and when the interpleader, Cowdery, dealt with Waterman and Smith, the alleged agents, it was incumbent upon Cowdery to discover whether their agency was general or special, and whether said pretended agents had authority, and whether such authority was in its nature and extent sufficient to permit them, as such agents, to make this contract with the interpleader.

In the case of Armstrong Music Co. v. Boysen, 77 Okla. 55, 185 Pac. 828, the court held:

"Ordinarily a principal is bound by a contract made for him by his agent, and the acts of his agent in reference therewith, while the agent is acting in the course of his employment and within the scope of actual or apparent authority."

Mr. Justice Ramsey, in discussing this proposition in the case of McDonald v. Strawn, 78 Okla. 271, 190 Pac. 558, held:

"It is incumbent upon a person dealing with an alleged agent to discover, at his peril, whether the assumed agency be general or special, that such pretended agent had authority, and that such authority is in its nature and extent sufficient to permit him to do the proposed act." Wheeler v. McGuire, 86 Ala. 398, 2 L. R. A. 808; United States v. Boyd, 5 How. 50, 12 L. Ed. 36;

Pullman Co. v. Meyers, 195 Ala. 397, 70 South. 763; Mechem on Agency (2nd Ed.) vol. 1, secs. 255 and 298; The Texas Co. v. Quelquejeu, 263 Fed. 491; Mechem on Agency (2nd Ed.) vol. 1, sec. 743; Sloan v. Brown, 228 Pa. 495, 139 Am. St. Rep. 1019; Cornish v. Woolverton, 32 Mont. 456, 108 Am. St. Rep. 598; Swindell v. Latham, 145 N. C. 144, 122 Am. St. Rep. 430; Blum v. Whipple, 194 Mass. 253, 120 Am. St. Rep. 553.

The interpleader takes the further position that the acts of Waterman and Smith, in dealing with Cowdery and contracting with him to drill the well on the Randall lease, were ratified by the plaintiffs afterwards, and, therefore, the plaintiffs are liable on said contract, notwithstanding the fact that Waterman and Smith had no authority in the first instance to make such a contract. We have carefully and closely examined the record in this case but we fail to find any evidence to show, or that tends to show, that the plaintiffs ratified said contract. In the first place, there is no evidence to show that any of the other members of the partnership of the Nowata Oil Syndicate knew that there was such a contract; and again, the principal cannot ratify an act of an agent, unless said act purports to have been for, and in behalf of, the principal.

"Ratification must be with full knowledge of all the facts. In order that a ratification of an unauthorized act, or transaction of any agent may be valid and binding, it is essential that the principal have full knowledge, at the time of the ratification, of all the material facts relative to the unauthorized transaction." Gaar, Scott & Co. v. Rogers, 46 Okla. 67, 148 Pac. 161.

Again:

"To establish a ratification of an unauthorized act, of one assuming to act as agent of a third person, the third person must have full knowledge of all the material facts at the time of the ratification." First Nat. Bank of Canadian v. Brewer, 73 Oklahoma, 174 Pac. 1077.

Again:

"The rule as to ratification is applicable only where the act, alleged to have been ratified by another, purported to have been for or in behalf of such other." Madill State Bank v. Weaver, 56 Okla. 183, 154 Pac. 478.

We are not unmindful of the well-established rule that where there is any evidence to support the verdict of the jury, the judgment of the lower court will not be disturbed on appeal; but in this case the evidence is wholly insufficient to support the verdict of the jury, and therefore, the judgment of the lower court is reversed for further proceedings in keeping with this opinion.

By the Court: It is so ordered.