### SHULER v. VIGER et al.

No. 17078—Opinion Filed Nov. 9, 1926.

Rehearing Denied Jan. 18, 1927.

**1. Principal and Agent—Person Dealing with Alleged Agent Required to Ascertain Authority.**

It is incumbent upon a person dealing with an alleged agent to discover, at his peril, whether the assumed agency be general or special, that such pretended agent had authority, and that such authority is in its nature and extent sufficient to permit him to do the proposed act.

**2. Same—Burden of Proof of Agency.**

The law itself makes no presumption of agency, and the burden of proving agency, including not only the fact of its existence, but its nature and extent, rests ordinarily upon the party who alleged it.

**3. Same—Requisites for Ratification of Unauthorized Acts.**

To establish a ratification of an unauthorized act, of one assuming to act as agent of a third person, the third person must have full knowledge of all the material facts at the time of the ratification.

**4. Same—Lack of Proof of Agency to Support Judgment for Brokers' Commission.**

Record examined, and held, that there is no evidence to show that the alleged agent who entered upon the oral agreement sued upon was acting in the course of his employment and within the scope of his actual or apparent authority. or that the acts of such agent were ratified by his principal.

(Syllabus by Pinkham. C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Tulsa County; W. B. Williams, Judge.

Action by F. G. Viger and C. D. Hughes against Isaac Shuler for a brokerage commission. Judgment for plaintiffs, and defendant brings error. Reversed and remanded.

C. R. Nixon, for plaintiff in error.

F. G. Viger and F. E. Riddle, for defendants in error.

Opinion by PINKHAM, C. Isaac Shuler, the plaintiff in error, was the defendant in the trial court, and the defendants in error F. G. Viger and C. D. Hughes were plaintiffs. The parties will be referred to as they appeared in the trial court.

The plaintiffs alleged in their petition that on and prior to August 4, 1919, the defendant was the owner of a certain string of standard tools for the drilling of oil wells, and that he was desirous of selling the same, and that, acting through and by his authorized agent, one T. A. Simpson, he agreed orally with the plaintiffs that if they would sell the said tools for the sum of $10,000 net for the defendant. or would find a purchaser for the same for that amount, the plaintiffs could retain the amount paid by such purchaser in excess of the sum of $10,000 as their commission.

Plaintiffs further alleged that they found a purchaser, one Staley, who purchased said tools for the sum of $15,000. which amount was paid by the said Staley to the defendant, and that the defendant paid to plaintiffs the sum of $1,000, which amount has been credited upon the amount due plaintiffs by defendant, and that defendant is now justly and legally indebted to the plaintiffs in the sum of $4,000, with interest thereon.

The defendant filed a verified answer denying that he authorized the said T. A. Simpson to negotiate the sale of said tools on a basis of $10,000 net to defendant.

The defendant in his answer admits that he personally sold the tools in question to the said Staley for the sum of $15,000, and that he paid the plaintiff Viger the sum of $1,000; and further states that he paid the said Simpson the sum of $500, which sums defendant alleges were received by them in full payment for all services rendered or claimed to have been rendered by them in connection with the sale of the said tools.

A reply was filed by the plaintiffs denying the allegations of the defendant's answer. Upon the issues thus joined, the case was tried to a jury and resulted in a verdict for the plaintiffs in the sum of $3,900, with interest.

Judgment was rendered by the court in accordance with the verdict. Motion for new trial was overruled, exceptions reserved, and the cause comes regularly on appeal

by the defendant to this court upon petition in error and case-made attached.

For reversal of the judgment a number of specifications of error are set out in the petition in error and in defendant's brief, all of which are presented and discussed under the proposition that the verdict and judgment are not supported by the evidence and are contrary to law.

The record discloses that the defendant, Isaac Shuler, was the owner of a string of tools for drilling oil wells, and that one T. A. Simpson, who, it appears, had been connected with the defendant in the oil business, brought to the defendant a man by the name of Staley from the state of Texas to purchase the tools in question, and negotiations were carried on between the defendant Shuler and Mr. Staley and his partner, which finally resulted in the sale of the said tools to Mr. Staley for $15,000. It further appears without dispute that at no time prior to the closing of the transaction and the receipt of the money by the defendant had the defendant ever heard that the plaintiffs or either of them claimed any commission for the sale of the property, and that not until some ten days or two weeks thereafter when the defendant paid Simpson $500 and the plaintiff Viger $1,000.

It was not contended by the plaintiffs that they or either of them had any contract, oral or written, with the defendant Isaac Shuler for the sale of these tools. It was the theory of the plaintiffs that Simpson was the agent of the defendant, and that they had informed Simpson that they had a party who desired to purchase a string of drilling tools. and that Simpson, acting on behalf of the defendant, informed them that the defendant had a string of tools which he would sell for $10,000, and that an oral agreement was then made between Simpson and the plaintiffs to the effect that the tools should be sold to Mr. Staley for $15,000, and that the plaintiffs should have as commission or compensation for their services for producing the purchaser, the difference between $10,-000 net to the defendant and $15,000, the sum to be paid by the purchaser, less $500 to be paid Simpson by the plaintiffs.

The facts upon which this theory was based, as disclosed by the evidence, are substantially as follows: The plaintiff Hughes met Mr. Staley at a hotel at Tulsa, and learned from him that he had come from Texas to buy a string of drilling tools, and Staley asked Mr. Hughes if he knew where he could buy them. Mr. Hughes did not know at the time and so informed Mr. Staley, and, later, Hughes inquired of the plaintiff, Viger, where such tools could be bought. The plaintiff Viger did not know, and later the plaintiffs met Simpson, and Viger asked Simpson if he knew where a string of tools could be purchased, stating that he had a purchaser. Simpson stated to them that the defendant had such a string of tools, and he thought they could be bought for $10,000. Simpson was introduced by the plaintiffs to Staley, the purchaser. and priced this string of tools to him at $15,000.

The plaintiffs each testified that Simpson stated to them that the defendant, Shuler, had a string of tools that was ready to load, and that he, Shuler, wanted $10,000 for them, and that after making this statement Simpson went to the defendant's office and came back in a short time and reported to them that the defendant would take $10,000 for the tools, but the plaintiffs would have to do the loading.

It is admitted that neither of the plaintiffs accompanied Simpson to the office of the defendant, and that they at no time prior to the sale of the tools had any conversation with the defendant relating to the sale of the same.

The plaintiffs relied entirely, in support of their claim that the defendant was liable to them in the sum of $5,000 on the sale of the tools by the owner to the purchaser, Staley, for $15,000, upon what they claim was an agreement entered into between themselves and Simpson, upon the theory that Simpson was the authorized agent of the defendant. The vital question, therefore, is whether Simpson was or was not such an agent.

It has been held by this court that:

"It is incumbent upon a person dealing with an alleged agent to discover, at his peril, whether the assumed agency be general or special, that such pretended agent has authority, and that such authority is in its nature and extent sufficient to permit him to do the proposed act," and that: "The law itself makes no presumption of agency, and the burden of proving agency, including not only the fact of its existence, but its nature and extent, rests ordinarily upon the party who alleged it." McDonald, Adm'r, v. Strawn, 78 Okla. 271, 190 Pac. 558.

At the close of plaintiffs' testimony the defendant interposed a demurrer to the evidence, which was by the court overruled. We are unable to discover any evidence introduced by the plaintiffs in reference to

Simpson's agency, except the testimony of the plaintiffs as to the declarations of Simpson, and this, we think, is clearly insufficient to establish the fact that Simpson was authorized to obligate the defendant to pay to the plaintiffs a commission of $5,000 on a $15,000 sale of the string of tools in question.

It is contended by plaintiffs that if there was no testimony on the part of plaintiffs in the first instance proving the authority of Simpson to represent the defendant Shuler in the negotiations, there was ample testimony showing ratification of the agreement made by Simpson whereby plaintiffs were to receive one-third of $15,000 on the sale of these tools for that sum. That there can never be a ratification of an unauthorized act of an agent by a principal unless the principal has full knowledge of all the material facts at the time of the ratification is well settled law.

In Gaar, Scott & Co. v. Rogers, 46 Okla. 67, 148 Pac. 161, the court quotes with approval the rule as laid down by Mechem on Agency, 395, as follows:

"Any ratification of an unauthorized actor contract, in order to be made effectual and obligatory upon the alleged principal, must be shown to have been made by him with a full and complete knowledge of all the material facts connected with the transaction to which it relates; and especially must it appear that the existence of the contract and its nature and consideration were known to him."

The defendant, Shuler, testified that all the conversations he had had with the plaintiffs were after the deal was closed, and he had received his money, and the tools had been delivered to the purchaser in Texas, and at no time did he ever authorize Simpson to make a deal of the kind testified to by the plaintiffs; and that he never promised either of the plaintiffs a commission. He testified that a representative of Mr. Staley, one Green, asked him what he would take for the tools, and that he told him $15,000 and load the tools.

The defendant testified that he never had any agreement or understanding with Simpson or with anyone, that he would sell these tools for $10,000 net to him; that the plaintiff Viger came to his office sometime after he sold the tools to Mr. Staley for $15,000, and stated that he, Viger, needed some money—$1,000—and that he gave him $1,000; "that Simpson had told him he had agreed to pay Mr. Viger." The check given at the time to Viger by the defendant in the sum

of $1,000 was introduced in evidence and bears the indorsement "Commission on tools."

The defendant then testified that there was nothing said at the time of that check being given to Viger of any balance being due. The defendant further stated that he also paid Simpson $500 for his services in the matter.

The deposition of T. A. Simpson was taken by the plaintiffs, but was introduced in evidence by the defendant. It appears from this deposition that Simpson was asked the following question: "Were you representing Mr. Shuler in that transaction?" to which he answered as follows: "At the start of the transaction I was acting wholly for myself and stated to Mr. Viger that it was a matter wholly for Mr. Shuler to finish." He was asked: "At any time before you consulted Mr. Shuler about this matter, was anything said between you and Mr. Viger as to Mr. Viger's being entitled under the arrangement you have detailed to receive the $15,000 for this string of tools as proposed for the price thereof, or that in case the $15,000 was paid to Mr. Shuler that Mr. Shuler would pay to Mr. Viger any excess over $10,000 which he might receive from the purchase of the tools?" to which question Mr. Simpson answered: "No, I recall no such conversation, because it was expressly understood that the whole matter hinged upon Mr. Shuler's decision."

In answer to the question as to what Mr. Shuler authorized him to do for him in the sale of these tools Mr. Simpson answered:

"Well, at that time when I took the matter up with him, I stated to him the talk Mr. Viger and I had had, and if my memory serves me right he thought he had more than $10,000 in the tools: that he would be governed by his book record and which he would have his bookkeepers get out, but for me to go ahead on the deal on the $15,000 basis pending the check-up by Mr. Shuler of the amount of money he had in the tools."

He further testified that: "The book showed where Mr. Shuler had between $13,000 and $14,000 in the tools, as I remember it." He further stated that he told Mr. Shuler that he was making a deal for the string of tools for $10,000, and that Shuler told him to go ahead, but afterward Shuler claimed that the tools had cost him more than $10,000.

Whatever may have been the relation that existed between the plaintiffs and the purported agent, Simpson, with respect to the sale of the defendant's string of tools, it is, we think, clearly apparent that at the time

of the sale the defendant had not been made aware of the extent or nature of Simpson's representations to the plaintiffs, assuming that he represented to them that the defendant would sell the tools for $10,000 net to him, and that all over that sum would go to plaintiffs as a commission.

Many cases of this court are cited by the plaintiffs in their brief announcing the rule that where there is any evidence tending reasonably to establish agency and the jury so finds, the finding is conclusive upon this court. That rule has been steadfastly adhered to by the decisions of this court, but it is equally well settled that where the evidence is wholly insufficient to support the jury's verdict and is seen to be manifestly unjust, such verdict cannot be upheld, the verdict in such case being contrary to law. Nowata Oil Syndicate v. Commercial Nat. Bank (Cowdery, Interpleader), 93 Okla. 6, 219 Pac. 339.

In 2 R. C. L. 197, it is said:

"But while a reviewing court hesitates to set aside a verdict on the ground of insufficiency of the evidence, especially when the trial judge has refused to do so, still, if it is flagrantly contrary to the evidence and the court is convinced that an injustice has been done, it will and should set it aside. * * *"

From a close examination of the entire record before us, we are forced to the conclusion that the fact upon which the plaintiffs base their right—that Simpson was the authorized agent of the defendant or that the defendant ratified Simpson's act—was not established by any evidence legally sufficient to support the verdict and judgment rendered thereon.

As the case stands upon the record before us, the evidence furnishes no proof of Simpson being authorized to agree with the plaintiffs that the defendant would sell the tools for $10,000 net to him, the plaintiffs to receive the difference between that sum and the $15,000 paid by the purchaser to the defendant; or that the defendant ratified the acts of the purported agent.

We think the judgment of the district court should be reversed and remanded for a new trial.

By the Court: It is so ordered.