## McCALL et al. v. MONARCH ROYALTY CORPORATION et al.

No. 25907.   Jan. 19, 1937.

Rehearing Denied Feb. 9, 1937.

Louis W. Pratt and F. C. Swindell, for plaintiffs in error.

Geo. S. Ramsey, Villard Martin, and Garrett Logan, for defendant in error Monarch Royalty Corporation.

PER CURIAM. The plaintiffs in error were plaintiffs in the court below and the defendants in error were defendants. In this opinion we will refer to them as they were in the court below.

Plaintiffs' petition pleads that they had

entered into a written contract with the defendant Monarch Royalty Corporation, to sell to the defendant Monarch Royalty Corporation certain royalty in Pottawatomie county for a consideration of $15,000, and that the defendant breached its contract to purchase the royalty; that the royalty greatly depreciated in value, and that plaintiffs were damaged in the sum of $15,000, by reason of such breach of contract.

It alleged that in the transaction for the purchase of the real estate, Monarch Royalty Corporation was represented by the defendant A. K. Riley, its secretary and treasurer and general manager, and by one W. S. Brown.

To this petition the defendant Monarch Royalty Corporation filed a verified answer, denying that it entered into any contract for the purchase of royalty, and specially denying that A. K. Riley was its general manager, or that he had any authority to act for it in purchasing royalty.

It further specifically denied that W. S. Brown had any authority to act for it in such transaction, and pleaded the statute of frauds, being subdivision 5 of section 5034, C. O. S. 1921.

Thus, by the issues framed, the burden of proof was upon the plaintiffs, first, to prove the agency of Riley and Brown to represent the defendant Monarch Royalty Corporation in any contract for the purchase of royalty; and, second, to prove that such a contract was made.

In the contract for the sale of royalty, attached to plaintiffs' petition, the same was signed as follows:

"Signed:

"W. S. Brown
"First Party

"M. H. McClellan
"Second Party."

There was no evidence whatever in the record that W. S. Brown had any authority from the Monarch Royalty Corporation to represent it in the purchasing of the royalty in question. But plaintiffs rely upon a telegram to W. S. Brown, sent by the defendant A. K. Riley, which is as follows:

"'Sep. 22, 1928

"W. S. Brown
"109 Petroleum Building
"Shawnee, Okla.

"This is to confirm my purchase of East Half of North East Quarter Twenty seven five for Fifteen thousand dollars asking two days to examine and approve title and papers to be furnished by you. My reference is

R. M. Moody Vice President Exchange National Bank here.

"A. K. Riley
"Sec. & Treas. Monarch
"Royalty Corporation

"Paid

"Charge Monarch Royalty Corp."

Separate demurrers of the defendants to the plaintiffs' evidence were sustained by the court.

The brief of the plaintiffs does not contend that there was any liability on the part of the defendant Riley. In their brief they state:

"We contend McClellan and McCall were dealing with the corporation itself, when negotiating with A. K. Riley. The corporation was the one engaged in buying oil royalties not A. K. Riley. He had no money with which to purchase property of this kind and price.

"There is only one conclusion to be reached from this testimony, that is, Riley was not buying this for himself, but for the Monarch Royalty Corporation."

At no place in their brief do they make any contention that the defendant Riley was personally liable because of the transaction.

The plaintiffs used A. K. Riley as their witness, and he testified that he was a director of the Monarch Royalty Corporation, was secretary and treasurer of the corporation; that the corporation paid him a small consideration for his services and furnished him a room in its offices where he transacted business for himself as a broker in royalties; that he had no authority whatever to purchase anything for the Monarch Royalty Corporation; that he never did purchase anything for the Monarch Royalty Corporation; and that the Monarch Royalty Corporation was not the customer to whom he expected to sell the royalty when he signed the telegram above quoted. Being the plaintiffs' witness, they are bound by his testimony.

The fact that the defendant Riley was secretary and treasurer of the Monarch Royalty Corporation, and had a room in the offices of the Monarch Royalty Corporation where he transacted his own private business, was the only evidence which the plaintiffs showed of his authority from the Monarch Royalty Corporation to bind it to a contract for the purchase of royalty. Even if he had such authority, the telegram introduced by plaintiffs in evidence, and relied upon by them, does not purport to be for the purchase of the property for the Monarch Royalty Corporation, but rather to be the purchase by A. K. Riley for himself.

Since the authority of the defendant A. K.

Riley to contract for the defendant Monarch Royalty Corporation was denied under oath in the answer of the Monarch Royalty Corporation, the burden was upon the plaintiffs to show such authority. This appears to be the controlling issue in the case. There is no evidence from which such authority may be inferred.

Generally speaking, neither the secretary, nor treasurer, nor director of a corporation, as such, has authority to make contracts for it. The board of directors, as a board, has the authority to make contracts for a corporation.

In Cook on Corporations (8th Ed.) vol. 4, section 717, p. 3013, it is said:

"The secretary of a corporation as no power, merely as secretary of the company, to make contracts for it. The secretary is one of the corporate officers, but he has practically no authority. * * * The treasurer of a corporation has no power, merely by reason of his office as treasurer, to contract for the corporation."

And, in the same work, in section 712, it is said:

"A single director has no power to contract for the corporation."

In Thompson on Corporations (2d Ed.) vol. 2, section 1513, p. 588, it is said:

"Whatever may be the authority or power of the secretary as to the records and seal, and as to his official acts in communicating the actions of the corporation, it is, nevertheless, the rule that he has no inherent power to bind the corporation by original contracts made by him; or by letters or documents officially signed by him; or by his statements or representations. To this point the Wisconsin court said: 'It cannot be claimed here that Stemper (the secretary) had any power other than such as was incident to his office, because there is no evidence of any special delegation of power by action of the board of directors, or any implied authority by reason of the manner in which the business of the corporation was conducted.' And it was said by the Illinois court: 'The secretary of a corporation, so far as creating obligations or conducting its active business, has very limited powers. His duties are clerical. He is to keep the books, papers, and records, and has the custody of the corporate seal, which may be affixed to contracts and notes by him and is attested by his signature. A secretary has no general power, by virtue of his office, to make contracts for the corporation or to bind it by evidences of indebtedness.' "

Therefore, the fact that A. K. Riley was secretary-treasurer and a director of the defendant corporation did not of itself clothe him with authority to make contracts for the purchase of royalty for the corporation.

The testimony of Riley was that his duties were largely those of a clerical nature, and that he had no authority to bind the corporation. It was the duty of the plaintiffs, if they sought to bind the Monarch Royalty Corporation through the acts of Riley, to discover what Riley's authority was.

It was said by this court in the case of Shuler v. Viger, 123 Okla. 110, 252 P. 18:

"It is incumbent upon a person dealing with an alleged agent to discover, at his peril, whether the assumed agency be general or special, that such pretended agent had authority, and that such authority is in its nature and extent sufficient to permit him to do the proposed act."

This rule is so general that no further citation of authorities is necessary.

The plaintiffs by their testimony failed to meet the burden upon them to show that A. K. Riley had any authority to bind the Monarch Royalty Corporation by the telegram which he signed, regardless of whether the telegram by its terms purported to do so.

Having arrived at this conclusion, it is unnecessary for us to determine whether the telegram purported to bind the Monarch Royalty Corporation or to pass upon the other issues in the case.

The judgment of the lower court is affirmed.

The Supreme Court acknowledges the aid of Attorneys L. A. Maris, R. O. Wilson, and C. L. Armstrong in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Counsel, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Maris, and approved by Mr. Wilson and Mr. Armstrong, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

OSBORN, C. J., BAYLESS, V. C. J., and BUSBY, WELCH, PHELPS, CORN, and GIBSON, JJ., concur. RILEY and HURST, JJ., absent.