**Burt H. McINTOSH, Patton, Inc., and Bob Boyne d/b/a the Ladco Group, Appellees,**

v.

**VECTOR PROPERTIES, INC., an Oklahoma corporation, Appellant.**

**No. 81215.**

Court of Appeals of Oklahoma, Division No. 4.

Jan. 3, 1995.

Joseph A. McCormick, McCormick, Andrew & Clark, Tulsa, for appellees.

Randal D. Morley, Birmingham, Morley, Weatherford & Priore, Tulsa, for appellant.

## OPINION

STUBBLEFIELD, Judge.

This is an appeal from judgment in favor of plaintiffs after trial to the court on a claim for payment of real estate sales commission in connection with a lease. After a review of the record on appeal and applicable law, we affirm.

Plaintiff Burt H. McIntosh d/b/a The Ladco Group filed this action alleging that Defendants Tulsa Properties, Inc., and Vector Properties, Inc., had agreed to pay him a real estate sales commission for its brokerage services connected with the lease between Flint Industries and Bartlett Collins. Plaintiff originally sought judgment in the amount of $46,000 plus interest, attorney fees and costs.

Defendant Vector Properties, Inc., denied the allegations and asserted the affirmative defenses that Plaintiff had "no capacity to recover for agreements concerning leasing commissions between [Vector Properties] and others." After filing a motion to dismiss Tulsa Properties, which was sustained, Plaintiff filed an amended petition against Vector, seeking judgment in the amount of $21,-182.25, as his share of the commissions.

The cause proceeded to trial to the court after amendment of the petition to reflect that Plaintiffs were Burt H. McIntosh, Patton, Inc., and Bob Boyne d/b/a The Ladco Group. The trial court entered judgment in favor of Plaintiffs in the amount of $21,182.29 and awarded attorney fees in the amount of $10,000. After the trial court overruled Vector's motion for new trial, Vector appeals.

■ In an action tried to the court with the jury waived, the finding of the trial court is as binding on appeal as the verdict of the jury. Consequently, if there is any competent evidence to support the trial court's judgment, it will not be disturbed on appeal. *United Engines, Inc. v. McConnell Constr., Inc.,* 641 P.2d 1101 (Okla.1980).

Vector first proposes that the trial court "erred in granting judgment to ... 'the Ladco Group' because it failed to possess a valid real estate license." Citing 54 O.S.1991 § 83, Vector maintains that because Ladco was not licensed or registered, Ladco was prohibited from bringing the action and precluded from obtaining a judgment against Vector.

The style of the case clearly denotes that the action was brought by parties who were real estate brokers. The original petition was filed by Burt H. McIntosh, an individual, doing business as "The Ladco Group." However, through amendments, Stan Patton as an individual, and Bob Boyne as an individual, both of whom were both associated with McIntosh in "The Ladco Group," were added as Plaintiffs. Patton, Inc., was later substituted for Stan Patton. The evidence indicated that McIntosh, Boyne and Patton were all real estate brokers.

Thus, "The Ladco Group" was not *the* "Plaintiff," and the journal entry of judgment recites that the trial court granted "judgment in favor of the Plaintiffs." Therefore, there is no merit to this proposition of error.

■ .Vector also contends that the trial court erred in finding that Vector's vice-president, Robert Stewart, had apparent au-

thority to bind Vector to a contract to share brokerage commissions. Citing *McCall v. Monarch Royalty· Corp.*, 179 Okla. 213, 64 P.2d 871 (1937), and *State v. West*, 796 P.2d 1178 (Okla.Ct.App.1990), Vector asserts that Plaintiffs acted at their peril by dealing with Stewart without first discovering what, if any, authority he had to bind Vector.

The trial court carefully and thoughtfully explained its decisional process in applying the facts to the law. It distinguished between actual authority and "implied or apparent authority." It stated: "[T]his is not a buyer beware type of society where a ... person dealing with a corporation, has to deal with that corporation at [his] peril. You can deal with that corporation as to how the corporation allows its agents to conduct themselves." The trial court found that, while it may not have been the specific personal intent of Vector's president, James Dill, that Stewart enter into a contract on behalf of the corporation to pay commissions to Plaintiffs, Stewart had made binding commitments, at first orally and then verified by letter, to pay commissions.

■ "Apparent authority" of an agent is the authority that the principal knowingly allows the agent to assume or that he holds the agent out as possessing. *Rosser–Moon Furniture Co. v. Oklahoma State Bank*, 192 Okla. 169, 135 P.2d 336 (1942).

> Three elements must exist before a third party can hold a principal liable for the acts of another on an apparent-agency princip[le]: "(a) conduct of the principal [which would reasonably lead the third party to believe that the agent was authorized to act on behalf of the principal], (b) reliance thereon by [the] third person, and (c) change of position by the third party to his detriment."

*Sparks Bro. v. Texas Moran Exploration*, 829 P.2d 951, 954 (Okla.1991), quoting *Rosser–Moon*, 192 Okla. 169, 135 P.2d 336 (syllabus 2).

The evidence clearly indicates that Plaintiffs undertook action to procure a lease but upon agreement allowed Vector to pursue the prospect[1], and thus relied upon representations and changed their position to their detriment. The critical issue was the conduct of Vector that might have reasonably led Plaintiffs to believe Stewart could commit Vector to an ·agreement. Plaintiffs introduced into evidence correspondence on Vector's letterhead from "Vector Properties, Inc.," signed by "Robert S. Stewart, Vice President." The July 15, 1985, letter stated: "The purpose of this letter is to set forth commission guidelines between Vector or Phyllann Stansbarger and COMPROP for prospects/listings Phyllann generated or worked on while with COMPROP." COMPROP was a business entity in which Stan Patton of Plaintiff Patton, Inc., was the broker and Stansbarger had been an associate under his license.

A second letter from "Vector Properties, Inc., Robert S. Stewart, Vice President," written on Vector letterhead and dated December 30, 1985, was addressed to Plaintiff McIntosh of "The LADCO Group." In that letter, Stewart acknowledged that "one half of any commissions received by Vector Properties on the Bartlett Collins lease [would be paid] to LADCO. LADCO will then distribute commissions to its agents or owners as it sees fit." In that letter, Stewart further stated:

> I have been aware from the beginning of my talks with Ms. Stansbarger that this prospect originated from LADCO, and that while at COMPROP, Ms. Stansbarger continued to pursue this prospect. Because of Stan's relationship with both COMPROP and LADCO and because Ms. Stansbarger's license was with COMPROP, *I* erroneously assumed (and I think custom dictates) that Vector would pay COMPROP and COMPROP would pay LADCO. Also, it has never been my thought to pay (regardless to whom) less than a co-brokerage or 50/50 split of whatever Vector received from this transaction.

1. The original "prospect" was discovered by Boyne, an associate of Burt McIntosh. McIntosh and Patton agreed to work together to find a warehouse to lease to Bartlett Collins. An associate, who Patton had working on the matter, subsequently went to work for Vector. By agreement, Vector was then allowed to work the prospect and a lease resulted.

Stewart testified that, in letters he wrote on behalf of Vector, his designation was typed routinely as "Vice–President" and that Dill was aware that his letters went out that way.

Further, Dill gave conflicting testimony about Stewart's authority. He stated that, while Stewart was not authorized to write letters and sign his name as vice-president of Vector, Stewart was supervisor of sales associates and Vice–President of Vector marketing and was authorized to use the latter title. Dill testified that "[a]llowing him to use vice-president of marketing is something that's done many times in corporations where they're not actually the vice-president, to give him some ability to get in the door."

Dill acknowledged that if he had given his approval, Stewart *would* have had authority to enter into such an agreement, and related that if Stewart "came to me and discussed with me a particular agreement and got my approval and then I gave him the authority," he could enter into a fee commission arrangement with other real estate companies.

Thus, the trial court was presented with documentary and testimonial evidence regarding the manner in which Stewart held himself out—and to what extent Dill allowed Stewart to hold himself out—as having the authority to act on behalf of Vector. Certainly, there is competent evidence to support the trial court's determination that Plaintiffs were justified in relying on Stewart's "apparent authority" to bind the company by oral agreement, which was subsequently confirmed in writing by a letter on Vector's letterhead that indicated Stewart's stated capacity as a company officer.

■ Vector also contends that the "trial court erred in finding a contract existed for any brokerage commissions beyond those for the execution of the primary lease." It asserts that "[a] reasonable construction of the language of the so called oral agreement is that it was not intended to include Ladco getting a percentage of the commissions on extensions [or] renewals." However, the language of the letter from Stewart to McIntosh supports a finding that there was an intent that "one half of *any* commissions" Vector received on the subject lease would be paid to Plaintiffs. (Emphasis added).

In addition, Dill's testimony about "procuring cause" indicated an entitlement to a part of all commissions to such a procurer. In that regard, the trial court made a determination that McIntosh, through Boyne, was the procuring cause of the lease.

Additionally, there is a memo from Stewart to Dill in which Stewart stated:

Attached are a number of my correspondences to and from various people concerning the [subject] lease. Vector has received a commission on the expansion and renewal of this lease which I feel strongly should be co-brokered with Comprop/Ladco as several previous commissions were.

. . . .

8. Regardless of custom in our business, your prior experiences or prior Vector policies, it is inconceivable to me not to split all commissions on this deal with Patton (Ladco). If the Flint warehouse was our listing, this would be different. . . . There was certainly nothing in writing that says Vector was to be paid on renewals or expansions, but we get paid, and as long as we do, I feel we should pay Patton et al.

9. This is an unusual situation. There is very little in writing concerning this lease and what is in writing is not very specific. One reason for this is that among leasing agents there have been very few commission disputes, and until the Trammell Crow/Rippy type brokers got here, there wasn't much need for commission letters or documentation unless you didn't trust the person you were dealing with. I'm sure if Patton had felt the need to cover himself concerning all aspects of this lease he would have, but he didn't because he trusted me. If the situation was reversed, I would have trusted Patton and would honestly feel that Vector deserved half of any commission paid to Patton.

Thus, again there was competent evidence to support the trial court's determination that "the agreement as to the payment of all commissions was a binding agreement on Vector."

Vector's last proposition was that the trial court erred in overruling its motion for new trial. However, the bases for that motion were identical to those raised on appeal. Each of those propositions have been addressed heretofore. Accordingly, we find that the trial court did not abuse its sound discretion in overruling Vector's motion for a new trial. *See Dodson v. Henderson Properties, Inc.,* 708 P.2d 1064 (Okla.1985).

Having found that the trial court's judgment is supported by competent evidence and not contrary to law, *Pracht v. Oklahoma State Bank,* 592 P.2d 976 (Okla.1979), its judgment is AFFIRMED.

TAYLOR, P.J., and GOODMAN, J., concur.