## FEDERAL DEPOSIT INSURANCE CORP. v. GRIM.

No. 28382.    Oct. 25, 1938.

Rehearing Denied Jan. 31, 1939.

Everest, McKenzie & Gibbens and Francis C. Brown, for plaintiff in error.

Sylvester Grim, for defendant in error.

HURST, J. This is an action for breach of contract. Judgment was rendered for plaintiff, Grim, and defendant appeals. The facts are as follows:

Plaintiff alleged in his petition that on or about April 15, 1935, the Federal Deposit Insurance Corporation, defendant, through its duly authorized agent, orally employed him to represent it in matters involving disputed claims and all litigation arising therefrom in connection with the payment of guaranteed deposits in the insolvent First State Bank of Cheyenne. Plaintiff further alleged that at the time of his employment he was requested by defendant to sign. which he did,

an "Attorney's Agreement," a copy of which was attached to the petition, reading as follows (in part):

"To the Federal Deposit Insurance Corporation, Washington, D. C.

"The undersigned, consideration of his, her or their employment as attorney for the Federal Deposit Insurance Corporation in connection with certain disputed claims for deposits claimed to be due from the First State Bank, insolvent, located at Cheyenne, Oklahoma, agrees that all fees for services rendered the Corporation will be reasonable. and subject to the approval of the Board of Directors of the Federal Deposit Insurance Corporation, whose decision as to such fees shall be final.

"* * * It is agreed that either the undersigned or the Federal Deposit Insurance Corporation may terminate this employment at will and that upon termination, or prior thereto on demand, all papers belonging to the Corporation or the trust will be returned to the Corporation immediately.

"Dated: April 15, 1935, Washington, D. C.
"Orval Grim."

Plaintiff further alleged that upon receipt of the foregoing, the defendant, on April 15, 1935, through its counsel, Francis C. Brown, wrote a letter to Bruce P. Greene, its agent in charge of its business in connection with the bank in Cheyenne, reading as follows:

"This will introduce Mr. Orval Grim who has been employed by this corporation to advise with you in connection with the paying off of the insured deposits of the First State Bank, Cheyenne, Oklahoma.

"Kindly have each matter referred to Mr. Grim covered by a memorandum setting forth the question involved briefly and furnish a copy thereof to the office. I have requested Mr. Grim to keep a detailed record of all services rendered which should be forwarded to this office once a month, and a copy thereof furnished to you."

Plaintiff further alleged that he was at all times ready and willing to perform his part of the contract but defendant failed and neglected to give him any legal business pertaining to the disputed claims.

Defendant's answer denied that the "Attorneys Agreement" constituted a contract between plaintiff and it, but was to govern in case he was thereafter employed by defendant, which was never done. Defendant further denied that the letter to Greene was any contract of employment between plaintiff and defendant, but was merely anticipatory of employment in case Greene referred any matters to plaintiff.

At the trial of the cause, the following resolution of the board of directors of defendant, passed on April 2, 1935, was introduced in evidence:

"The question of the employment of counsel to represent the corporation in the matter of the receivership of the First State Bank of Cheyenne, Oklahoma, was considered, and upon the recommendation of general counsel, Birdzell, Director O'Connor moved the appointment of Mr. Orval Grim under the usual contract for the doing of such special work as may be required by the corporation, the compensation to be fixed subject to the approval of the corporation."

Plaintiff testified, among other things, to conversations had with Birdzell, defendant's chief counsel, and Francis C. Brown, counsel in charge of the closed bank division of defendant corporation, both before and after said resolution was passed, wherein he was told that there were some disputed claims in the bank, and litigation would probably arise therefrom, the handling of which would be part of his duties and employment, and that his fees would probably run into several hundred dollars a month. He further testified as to certain litigated claims which had arisen in connection with the defendant's guarantee, but that he had not been called in on the cases by defendant, and that he had not received any fees whatever from defendant. Defendant's demurrer to the evidence and request for instructed verdict were both overruled. The jury returned a verdict for plaintiff for $1,500, and judgment was rendered therefor.

As we view this case, the decisive question is whether the trial court erred in overruling defendant's demurrer to the evidence and in refusing to direct a verdict for defendant. Defendant's contention in this regard is that plaintiff did not establish that any duly authorized agent of defendant entered into an oral contract of employment with him as alleged; and that the agency of Brown and Birdzell was never established. Defendant relies on authorities holding that it is incumbent on a person dealing with an alleged agent to discover at his peril whether the assumed agency be general or special, that such pretended agent had authority, and that such authority is in its nature and extent sufficient to permit him to do the proposed act. See Shuler v. Viger (1926) 123 Okla. 110, 252 P. 18, and McCall v. Monarch Royalty Corporation (1937) 179 Okla. 213, 64 P.2d 871. Plaintiff, on the other hand, claims that he was dealing with a known agent, and the applicable rule is, that in dealing with such an agent, one has a right to presume that the agency is general and not special, and that such agent

is acting within the scope of his authority and the principal will be bound by the act of the agent. Smith Supply Co. v. Stephens (1934) 169 Okla. 555, 37 P.2d 926. The difficulty, however, with plaintiff's position is that by his own testimony he disclosed that he was informed of Brown's limited authority when he related how Brown told him that "he (Brown) would make a recommendation to the general counsel for my (plaintiff's) appointment." This actual knowledge of Brown's limitations was as binding upon plaintiff as upon Brown and defeats any right of the plaintiff to rely on the ostensible authority of Brown to contract for his services so as to bind the defendant. Cargile v. Union State Bank (1914) 40 Okla. 506, 139 P. 701; 2 C. J. S. 1188, sec. 92; 2 Am. Jur. 80, sec. 99; Restatement of Law of Agency, sec. 166. We are not concerned with Birdzell, since plaintiff in his brief only contends that he was employed by Brown.

Since the oral conversations plaintiff had with Brown do not form part of the contract of employment because the latter had no authority so to bind defendant, it is necessary to determine the scope of plaintiff's employment based upon the written contract, which, we will assume without deciding, consists of the resolution of April 2, 1935, the "Attorneys Agreement" of April 15, 1935, and the letter of Brown to Greene of April 15, 1935, since this position is most favorable to plaintiff. Where, as here, there is no ambiguity in the language of the contract, its construction is a matter of law for the court, and parol evidence is inadmissible to vary its terms. City of Hobart v. Dailey (1934) 170 Okla. 107, 39 P.2d 44.

An examination of the instruments constituting the contract, as aforesaid, discloses that defendant employed plaintiff to do such special work with relation to the payment of claims against defendant arising out of the insolvency of the First State Bank at Cheyenne as the latter required. Such special work was to consist of advice to the local agent at Cheyenne on matters of paying off insured deposits in the bank. It is plain, however, that by the terms of this agreement, if defendant did not require or request plaintiff to advise with its agent relating to such disputed claims, then plaintiff would not be entitled to any compensation. Since the undisputed evidence discloses that defendant made no such request of plaintiff, the trial court erred in not sustaining defendant's motion for a directed verdict.

Plaintiff contends that defendant should have terminated the employment if it did not intend to use his services. But no provision to that effect is contained in the contract, which fixes the rights and liabilities of the parties, and we are not at liberty to revise it and make a better contract for plaintiff than he has made. 12 Am. Jur. 749; 13 C. J. 525; Anthis v. Sullivan Oil & Gas Co. (1921) 83 Okla. 86, 203 P. 187; British American Oil Producing Co. v. Midway Oil Co., 183 Okla. 475, 82 P.2d 1049.

The judgment is reversed, with directions to the trial court to render judgment for defendant.

BAYLESS, V. C. J., and RILEY, GIBSON, and DAVISON, JJ., concur.