GREEN CONSTRUCTION COMPANY,
an Iowa corporation, Plaintiff–
Appellant and Cross–Appellee,

v.

The KANSAS POWER & LIGHT COM-
PANY, Defendant–Counterclaimant–
Appellee and Cross–Appellant,

v.

SEABOARD SURETY COMPANY and
Green Holdings, Inc., Counterclaim–
Defendants–Appellees.

Nos. 91–3150, 91–3151.

United States Court of Appeals,
Tenth Circuit.

July 21, 1993.

1006

John P. Ahlers, Barokas & Martin, Seattle, WA (Kevin E. Glynn, Niewald, Waldeck & Brown, Kansas City, MO and Gilbert G. Lundstrom, Woods & Aitken, Lincoln, NE, with him on the brief) for plaintiff-appellant.

Jeffrey S. Southard, Kansas Power & Light Co., Topeka, KS (J. Nick Badgerow, Spencer, Fane, Britt & Browne, Overland Park, KS, with him on the brief) for defendant-appellee.

Before KELLY and SETH, Circuit Judges, and KANE, District Judge.[†]

PAUL KELLY, Jr., Circuit Judge.

This appeal arises out of a contract dispute over the construction of a dam by Plaintiff-appellant Green Construction for Defendant-appellee Kansas Power and Light (KPL). Green Construction appeals the district court's order limiting its recovery to contract damages and disallowing additional expenses and prejudgment interest. KPL cross-appeals the district court's orders denying KPL's motions for realignment of the parties, bifurcation of the trial, post-trial juror interviews and judgment notwithstanding the verdict or a new trial. KPL also appeals the admission of evidence of insurance and the testimony of multiple expert witnesses. Our jurisdiction arises under 28 U.S.C. § 1291 and we affirm.

## Background

### The best laid plans ...

In 1984, KPL solicited bids for the construction of an earthen dam to create a reservoir at a power plant in Kansas. The dam was to be built out of the clay soil found at the project site. KPL provided bidders with a Geotechnical Data Report on the subsurface conditions at the site, but instructed the bidders to make their own investigation as there would be no future adjustment in price for unforeseen conditions. Green was the lowest bidder, but did not conduct an investigation.

---

† The Honorable John L. Kane, Jr., Senior United States District Judge for the District of Colorado, sitting by designation.

The contract required Green to construct the dam with a soil moisture content that would yield the greatest strength. The soil moisture range was to be +3% to −2% from "optimum." The soil in the borrow area (located behind the dam site) contained more moisture than indicated in the Geotechnical Report, however. Green began construction in the spring of 1985 and finished in June 1986. Within a few weeks, the dam developed cracks which Green attempted, unsuccessfully, to fix. KPL refused to accept the dam and eventually replaced the dam at its own cost. KPL withheld $420,000, or 5% of the contract price, which would have been due to Green upon acceptance.

Green initiated litigation to collect the 5% retainage as well as extra costs incurred during construction, based on theories of implied warranty, constructive change and misrepresentation. Green argued that the dam failed due to KPL's design. KPL counterclaimed alleging defective construction and breach of contract. The district court granted summary judgment for KPL on Green's claims for additional compensation, with the exception of the compensation based on misrepresentation, which it ruled would be available only as a set-off against any damages awarded to KPL. A jury trial resulted in a verdict for Green on its retainage claim and denying recovery to KPL. Both sides appeal, raising numerous issues.

*Discussion*

## I. Green's Claim for Additional Compensation

Green Construction appeals the district court's partial summary judgment on its claim for expenses in excess of the contract price. The district court eliminated Green's theories of implied warranty and constructive change, and limited any recovery based on

misrepresentation to a set-off against damages that might be awarded to KPL.

We review summary judgment de novo and apply the same legal standard used by the district court under Fed.R.Civ.P. 56(c). *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence which would require submission of the case to a jury. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–52, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986); *Hall v. Bellmon,* 935 F.2d 1106, 1111 (10th Cir.1991). Kansas law governs in this diversity action, and in the absence of state cases on point we will look to other state courts as well as federal decisions. *Armijo v. Ex Cam, Inc.,* 843 F.2d 406, 407 (10th Cir.1988). We review de novo the district court's application of Kansas law. *Salve Regina College v. Russell,* 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

### A. Implied Warranty

Green contends that the information provided to bidders regarding subsurface conditions created an implied warranty of these conditions. The district court found no implied warranty as a matter of law because the construction contract expressly instructed bidders to conduct their own investigation of the site, placed the risk of excessively moist soil on the contractor, and stated that the "[l]ogs of test borings may not be indicative of all subsurface conditions that may be encountered." [1]

---

1. The relevant contract clauses are as follows:

 A.7 *LOCAL CONDITIONS.* Each bidder shall visit the site of the work and thoroughly inform himself relative to construction hazards and procedure, labor, and all other conditions and factors, local and otherwise, which would affect the prosecution and completion of the work and the cost thereof. . . .

 It must be understood and agreed that all such factors have been properly investigated and considered in the preparation of every proposal submitted, as there will be no subsequent financial adjustment, to any contract awarded thereunder, which is based on the lack of such prior information or its effect on the cost of the work.

 A.8 *SUBSURFACE CONDITIONS.* The determination of the character of subsurface materials . . . shall be each bidder's responsibility. Borings, field testing, and laboratory tests have

Green argues that: (1) the project owner impliedly warrants the accuracy and suitability of its plans and specifications; (2) additional compensation was waived only as to local conditions, as addressed in Section A.7 of the contract, and not as to subsurface conditions, addressed in Section A.8; (3) boilerplate disclaimers do not abrogate an implied warranty; and (4) KPL cannot disclaim the accuracy of the tests where the data constitutes a positive misrepresentation.

 Generally, absent fraud, the party who agrees to complete construction for a fixed cost must absorb any losses resulting from unforeseen conditions. *Reece Const. Co. v. State Highway Com'n,* 6 Kan.App.2d 188, 627 P.2d 361, 364 (1981). When a contract contains a site inspection clause, it places a duty on the contractor to exercise professional skill in inspecting the site and estimating the cost of work. *Pinkerton and Laws Co. v. Roadway Express, Inc.,* 650 F.Supp. 1138, 1146 (N.D.Ga.1986). Thus, Green is not entitled to additional compensation merely because the project was more expensive due to unexpected soil moisture. *See United States v. Spearin,* 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166 (1918). Green may still recover, though, if KPL impliedly warranted the plans and specifications, and then breached that warranty. *Id.* at 136, 39 S.Ct. at 61; *Trustees of Indiana Univ. v. Aetna Cas. & Sur. Co.,* 920 F.2d 429, 436 (7th Cir.1990). An implied warranty will only be found where the owner made unequivocal affirmative statements which were false or misleading. *Christie v. United States,* 237 U.S. 234, 35 S.Ct. 565, 59 L.Ed. 933 (1915). Such a warranty is not avoided by standard clauses disclaiming responsibility for the accuracy of data. *Hollerbach v. United States,* 233 U.S. 165, 34 S.Ct. 553, 58 L.Ed. 898 (1914).

 However, where a contractor has a duty to make an independent inspection, reliance on the owner's specifications may very well be unreasonable. *Brant Constr. Co. v. Metropolitan Water Reclam. Dist.,* 967 F.2d 244, 248 (7th Cir.1992). An owner does not create an implied warranty by providing some soil information but instructing the contractor that the information may not be complete and that an independent site and soil investigation is required. *See McDevitt & Street Co. v. Marriott Corp.,* 713 F.Supp. 906, 914 (E.D.Va.1989), *aff'd in relevant part,* 911 F.2d 723 (4th Cir.1990); *Pinkerton,* 650 F.Supp. at 1146; *Anderson v. Golden,* 569 F.Supp. 122, 142–43 (S.D.Ga.1982). This contract, like those in *McDevitt, Pinkerton* and *Anderson,* squarely placed the risk of uncertainty as to site and soil conditions on the contractor. There was no implied warranty.

### B. Constructive Change

Green's next theory is that the extra work caused by the wet soil amounted to a material change in the scope of the project, entitling Green to additional compensation. Again, we disagree.

When Green encountered wet soil in the designated borrow area, Green opted to obtain soil from another location rather than process (dry out) the soil from the borrow area. KPL consented to the change. Green relies on the "changes" clause, section D.27 of the contract, and on KPL's assent to the change, in support of this theory of recovery. Section D.27 provides in part:

> The COMPANY, without invalidating the Contract, may order any extra work or make any changes by altering, adding to or reducing the work, provided the Contract price be adjusted as provided herein and evidenced by written agreement....

Aplt.App. at 58. The district court found that section D.27 applies only to changes in the scope of work caused by amendments to the project design, and not to difficulties in performance due to unforeseen conditions.

 Generally, a contractor may recover for additional work necessitated by a material change in specifications. 13 Am.Jur.2d *Building and Construction Contracts* § 19

---

been performed for the project design. This information has been bound separately and is issued with these specifications. Rock cores from this site are available for inspection upon

request at the Jeffrey Energy Center. Logs of test borings may not be indicative of all subsurface conditions that may be encountered.
Aplt.App. at 28.

(1964 & Supp.1993). However, there can be no recovery for extra work if the work is covered by the terms of the contract. *Id.* "The extra work doctrine" allows additional compensation only "for work that was not within the scope of the contract, such that the parties could not have established a contract price of their own." *Brant Constr.*, 967 F.2d at 248. Here, Green is not entitled to additional compensation merely because the work it had contracted for was made more expensive by wet soil. *See Pinkerton*, 650 F.Supp. at 1146 (citing *Spearin*, 248 U.S. 132, 39 S.Ct. 59). The fact that KPL assented to the change in the source of soil does not amount to a change in the scope of the project.

### C. Misrepresentation

■ Even where no implied warranty exists, an owner may be liable for unknowingly (or "innocently") misrepresenting material facts about site conditions. The district court ruled that an innocent misrepresentation claim may be maintained only for equitable relief or as a defense to breach of contract. The court therefore limited Green's use of the claim to that of a defense in the event of an award to KPL. Green argues that money damages are available for innocent misrepresentation and that the jury should have been so instructed.

■ The *Restatement (Second) of Contracts* § 164 (1981) provides that where one party makes a material misrepresentation, which the recipient justifiably relies upon, the contract is voidable by the recipient. Innocent misrepresentation claims are usually limited to equitable relief. *See id.* ; 17 C.J.S. *Contracts* §§ 147, 152. Kansas law recognizes the equitable theory of innocent misrepresentation as grounds for rescission of a contract. *Topinka v. American Eagle Fire Ins. Co.*, 167 Kan. 181, 205 P.2d 991, 993–94 (1949). Green relies on *Nichols v. Nold*, 174 Kan. 613, 258 P.2d 317 (1953) for the proposition that money damages are available for innocent misrepresentation. However, *Nichols* was a product liability action concerning the theory of implied warranty, not innocent misrepresentation. We agree with the district court that innocent misrepresentation in Kansas is limited to equitable relief, and the court did not err in refusing to instruct the jury on an affirmative claim for damages.

### II. Green's Claim for Prejudgment Interest

Finally, Green contends that the court erred in denying its Rule 59(e) motion for prejudgment interest on the damage award. We review the district court's order for an abuse of discretion. *Oklahoma Radio Assocs. v. F.D.I.C.*, 987 F.2d 685, 697 (10th Cir.1993); *U.S. Indus. Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1255 (10th Cir.1988).

■ In Kansas, prejudgment interest is allowed on liquidated claims. Kan.Stat. Ann. § 16–201 (1980); *Plains Resources, Inc. v. Gable*, 235 Kan. 580, 682 P.2d 653 (1984); *Royal College Shop, Inc. v. Northern Ins. Co.*, 895 F.2d 670, 673 (10th Cir.1990). "A claim becomes liquidated when both the amount due and the date on which it is due are fixed and certain, or when the same become definitely ascertainable by mathematical computation." *Plains Resources*, 682 P.2d at 657. It is irrelevant that the underlying liability is disputed, so long as the amount of damages is certain. *Royal College*, 895 F.2d at 674 (citing *Smart v. Hardware Dealers Mut. Fire Ins. Co.*, 181 F.Supp. 575 (D.Kan.1960)). The district court ruled that damages were not liquidated because the amount was disputed throughout trial and required a jury determination, so it could not be simply ascertained by a mathematical computation. Green prayed for $422,010.56 on its retainage claim at trial. KPL counterclaimed for breach of contract, demanding $12.9 million. KPL alternatively argued that any award to Green for retainage should be reduced pursuant to a "change order." The jury awarded $222,312.56 to Green. This is not a case where the parties stipulated to the damages or even generally agreed on the damages. *See Royal College Shop*, 895 F.2d at 674; *Crawford v. Prudential Ins. Co.*, 245 Kan. 724, 783 P.2d 900, 909 (1989). The district court did not abuse its discretion in denying prejudgment interest.

### III. KPL's Motions

KPL appeals numerous unfavorable rulings on its motions, some of which merit our attention while others border on frivolous. Some of KPL's arguments remind us that "[t]oo often, attorneys forget that the potential for success on appeal begins at the pretrial preparation stage [and] continues during the trial.... [M]ore often than one would expect, cases are lost on appeal due to a failure of counsel at the trial level to make a proper record, or to raise arguments or objections...." The Honorable Lawrence W. Pierce, *Appellate Advocacy: Some Reflections from the Bench*, 61 Fordham L.Rev. 829, 834 (1993). This admonition should be heeded by all who would litigate.

#### A. Motion for Realignment of the Parties

 KPL moved for a realignment of the parties sixteen months prior to trial, arguing before the magistrate that KPL was the "real" plaintiff and that Green had simply won the race to the courthouse. KPL relies on the disparity in the size of the damage claims; it sought $12.9 million, while Green was asking for a mere $422,000. KPL also contends that it was prejudiced by its defendant status at trial. This argument is meritless. First, KPL fails to direct us to any authority supporting this position. Second, we have previously held that the denial of a request for realignment, where the request is made in order to proceed first and last at trial, is not reversible error. *Commercial Iron & Metal Co. v. Bache Halsey Stuart, Inc.*, 581 F.2d 246, 250 (10th Cir.1978), *cert. denied*, 440 U.S. 914, 99 S.Ct. 1229, 59 L.Ed.2d 463 (1979). Finally, KPL failed to object to the magistrate's ruling within 10 days as required by Fed.R.Civ.P. 72(a). A party may not wait to see whether the verdict is favorable before deciding to object; failure to raise the issue below results in a waiver. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir.1991); *Polson v. Davis*, 895 F.2d 705, 711 (10th Cir.1990).

#### B. Motion for Bifurcation and Objection to Jury Trial

 KPL moved to strike Green Construction's request for a jury trial as untimely, arguing that the right was waived under Fed.R.Civ.P. 38(b) & (d) and that the nature of the case was too technical for a jury. Alternatively, KPL moved to bifurcate the claims against Green Holdings in order to simplify the trial. Both motions were denied. We review the district court's denial for abuse of discretion. *Eastridge Dev. Co. v. Halpert Assocs.*, 853 F.2d 772, 781 (10th Cir.1988); *Paramount Pictures Corp. v. Thompson Theatres, Inc.*, 621 F.2d 1088, 1090 (10th Cir.1980). Green requested a jury trial, but not within the ten days as provided by Rule 38(b). The district court granted Green's request. *See* Fed.R.Civ.P. 39(b); *Jolivet v. Deland*, 966 F.2d 573, 577 (10th Cir.1992). We have previously held that a jury trial should be granted in the absence of " 'strong and compelling reasons to the contrary.' " *AMF Turboscope, Inc. v. Cunningham*, 352 F.2d 150, 155 (10th Cir. 1965) (quoting *Swofford v. B & W, Inc.*, 336 F.2d 406, 409 (5th Cir.1964), *cert. denied*, 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965)). KPL's reasoning for striking the jury trial was that the subject matter would be too confusing for a jury. However, juries are commonly called upon to decide complex cases. We fail to see how the complexity of the subject was particularly prejudicial to KPL and we find no abuse of discretion.

 In the absence of a bench trial, KPL moved to bifurcate its alter ego claims against Green Holdings, in order to simplify the trial for the jury. KPL proposed trying the liability case with Green Construction first and, if KPL prevailed, holding a second trial against Green Holdings as the alter ego of Green Construction. The district courts have " 'broad discretion in deciding whether to sever issues for trial and the exercise of that discretion will be set aside only if clearly abused.' " *Eastridge Dev. Co.*, 853 F.2d at 781 (quoting *Easton v. City of Boulder*, 776 F.2d 1441, 1447 (10th Cir.1985), *cert. denied*, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986)). KPL fails to show that it suffered prejudice from this ruling and we find no abuse of discretion.

#### C. Motion for Post-trial Juror Interviews

KPL moved for an order allowing post-trial communication with the jury in order to

determine whether the jurors were influenced by outside factors. KPL's basis for the motion was that the husband of the jury foreperson was present during the entire trial and spoke to attorneys for both KPL and Green, but most often to those representing Green. He also chatted with corporate representatives of both parties who were observing the trial, and he regularly lunched with the jurors. KPL does not know the subject of the discussions involving Green, but claims that the juror's husband attempted to discuss specifics of the trial with KPL's attorneys on two occasions. Aplee. Supp.App. at 635–37. KPL's attorneys claim that they advised Green's attorneys that these communications appeared improper. KPL's attorneys neither expressed that concern to the judge nor formally objected. KPL now asserts that it was not fully aware of the extent of the relationship until the juror's husband sat at Green's counsel's table while awaiting the jury's deliberations. Green's attorneys submitted affidavits indicating that neither the trial nor the deliberations were discussed with the juror's husband. Aplee.Supp.App. at 660–66.

■■■■ District of Kansas Local Rule 123 allows juror interviews if granted by court order, for good cause. District courts have "wide discretion" to restrict attorney-juror contact in order to shield jurors from post-trial "fishing expeditions" by losing attorneys. *Journal Publishing Co. v. Mechem*, 801 F.2d 1233, 1236 (10th Cir.1986). The district court must balance the losing party's right to an impartial jury against the risks of juror harassment and jury tampering. *See Tanner v. United States*, 483 U.S. 107, 126–27, 107 S.Ct. 2739, 2750–51, 97 L.Ed.2d 90 (1987); *Delvaux v. Ford Motor Co.*, 764 F.2d 469, 471–72 (7th Cir.1985). We will uphold the denial of a motion where the allegation of misconduct is unsubstantiated. *Journal Publishing*, 801 F.2d at 1236; *see also Tanner*, 483 U.S. at 126–27, 107 S.Ct. at 2750–51. As KPL admitted, it is unaware of the content of the conversations between Green's attorneys and the juror's husband. The jury was admonished daily not to discuss the case with others and we will assume, absent more than speculation by the losing party, that the jury followed these instructions. *See United*

*States v. Armendariz*, 922 F.2d 602, 606 (10th Cir.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 87, 116 L.Ed.2d 59 (1991). We find no abuse of discretion.

Furthermore, KPL failed to object to the perceived impropriety during the trial. We reiterate that " 'a party may not sit idly by, watching error be committed, and then raise the claimed error on appeal without having accorded the trial court the opportunity' " to respond. *Chevron, U.S.A., Inc. v. Hand*, 763 F.2d 1184, 1186 (10th Cir.1985) (quoting *Gundy v. United States*, 728 F.2d 484, 488 (10th Cir.1984)).

### D. Motions for Directed Verdict, J.N.O.V. or New Trial

We first note that it is difficult to address KPL's arguments here because KPL, as cross-appellant, failed to include in its appendix all of the district court's orders from which it appeals and also makes inaccurate references to its own appendix (e.g., Aplee. Reply Brief at 8). *See* 10th Cir.R. 28.2(c), 30.1.1, 30.1.2, 30.2; Fed.R.App.P. 30(a).

■■■■ KPL's problems do not end there. KPL also failed to move for directed verdicts on several issues: Green's claim for retainage, KPL's breach of contract claim against Green, and KPL's alter ego claim against Green Holdings. KPL now attempts to appeal the denial of its motion for judgment n.o.v. or new trial on those issues. It has long been the rule that failure to move for a directed verdict precludes later appellate review of the sufficiency of the evidence. *Comcoa, Inc. v. NEC Tels., Inc.*, 931 F.2d 655, 663 n. 11 (10th Cir.1991). According to Fed. R.Civ.P. 50(a), specific grounds are required for a motion for directed verdict. At the close of evidence, KPL moved as follows: "At this time, the defendant ... moves for a directed verdict at the close of all the evidence, particularly on the claims of the plaintiff on the issue of misrepresentation." Aplee.Supp.App. at 1226. Although we interpret Rule 50's specificity requirement liberally, KPL's motion was clearly insufficient as to the above issues. As such, KPL has failed to preserve its sufficiency of the evidence argument as to the breach of contract, re-

tainage and alter ego claims. *See Comcoa, Inc.*, 931 F.2d at 663 n. 11; *Dow Chemical Corp. v. Weevil–Cide Co.*, 897 F.2d 481, 486 (10th Cir.1990); *Anderson v. Phillips Petroleum Co.*, 861 F.2d 631, 634 (10th Cir.1988). Furthermore, even had the error been properly preserved, we find the evidence sufficient to support the jury's findings.

KPL did move for a directed verdict on Seaboard Surety's defense of no termination of contract. The jury did not reach the issue of Seaboard's liability because it found no liability on the part of Green. Green's liability was a prerequisite to Seaboard's liability. Because we do not disturb the jury's finding on Green's liability, this issue is moot.

### IV. KPL's Evidentiary Objections

██ KPL appeals two adverse evidentiary rulings by the district court; rulings which allowed the admission of evidence of insurance and the admission of multiple expert witnesses. "A trial court necessarily possesses considerable discretion in determining the conduct of a trial" and its evidentiary rulings "will not be disturbed absent a manifest injustice to the parties." *Thweatt v. Ontko*, 814 F.2d 1466, 1470 (10th Cir.1987).

### A. Evidence of Insurance

██ Prior to trial, KPL filed a motion in limine to exclude evidence of insurance. That motion was denied. KPL failed to renew that objection during trial, except to object to the admission of the policy itself, based on improper foundation. Aplee.Supp. App. at 993. Green argues that KPL waived the objection by failing to preserve it for appeal. We have recently set forth a three-part test to determine whether it is necessary for the objecting party to renew the objection at trial when a motion in limine has been denied. *United States v. Mejia–Alarcon*, 995 F.2d 982 (10th Cir.1993). First, we ask whether the matter was adequately pre-

sented to the district court when it considered the motion. *Id.* at 986. We believe that it was. Second, we determine whether the issue is of a type that can be finally decided prior to trial. *Id.* We find that it was not. KPL argues that evidence of insurance was highly prejudicial, relying on the general rule excluding evidence of insurance in tort cases. Here, however, the surety company was a party to this contract case and the existence of the policy had relevance as a material term of the contract. The district court did not wish to exclude evidence relevant to the contract prior to having the benefit of hearing related evidence at trial. This was not purely an issue of law which could be definitively decided pretrial. *See id.* at 987.

The third requirement is that the district court's ruling be definitive. *Id.* at 987–88. We find that it was not. The district court indicated that the ruling would be subject to reconsideration at trial, informing KPL's counsel that "because the court has ruled does not prevent you from submitting them [the objections] again during the trial if the circumstances are such that you believe the Court should take another look at them." Aplee.Supp.App. at 39.

Based on the above, we find that KPL's objection was of the type that must be renewed, and thus KPL has waived the objection. *See McEwen v. City of Norman*, 926 F.2d 1539 (10th Cir.1991). As for the objection to foundation, we find that the district court was within its discretion in overruling it.

### B. Cumulative Expert Testimony

██ Finally, KPL appeals the number of expert witnesses which were allowed to testify.[2] We will not disturb an evidentiary ruling unless a substantial right of a party has been affected. Fed.R.Evid. 103(a). In technical cases such as this, it is particularly

---

2. KPL filed a motion in limine with the magistrate prior to the depositions of the experts, requesting a limit on the number of experts which Green could present. However, KPL withdrew that motion before the magistrate could rule on it. Aplee.Supp.App. at 600. KPL then filed a motion to strike two particular experts that Green had added close to the time of trial. KPL

argued that the last minute listing of the experts was prejudicial and that their testimony was cumulative. *Id.* at 620. The court denied KPL's motion. *Id.* at 733. KPL renewed the objection during trial, albeit during the testimony of a different expert than those listed in its motion. *Id.* at 1010.

appropriate that we accord deference to the ruling of the trial judge, who is most familiar with the issues and evidence. *C.A. Assocs. v. Dow Chem. Co.*, 918 F.2d 1485, 1489 (10th Cir.1990). Green Construction, Green Holdings and KPL presented numerous expert witnesses. KPL contends that both it and the jury were overwhelmed by Green's cumulative experts. It is certainly within the district court's discretion to limit the number of experts, provided the witnesses are not excluded arbitrarily, or on the basis of mere numbers. *See* Fed.R.Civ.P. 16(c)(4); *Coal Resources, Inc. v. Gulf & W. Ind.*, 865 F.2d 761, 769 (6th Cir.1989); *Aetna Cas. & Sur. Co. v. Guynes*, 713 F.2d 1187, 1193 (5th Cir.1983); *MCI Communications v. American Tel. and Tel. Co.*, 708 F.2d 1081, 1171 (7th Cir.), *cert. denied*, 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983). By the time KPL objected (two days prior to the end of the six week trial), practically all of the expert testimony had been presented. We find no abuse of discretion in admitting the final expert, who was offered to tie the evidence together.

For the foregoing reasons, the district court's judgment is AFFIRMED.