**TERRY MATTHEWS, INC., Plaintiff,**

v.

**C & L CONTRACTING, INC.,
et al., Defendants.**

**No. CIV–95–1879–R.**

United States District Court,
W.D. Oklahoma.

March 6, 1997.

Alan W. Agee and John B. Agee, Garvin, Agee, Carlton & Mashburn, Pauls Valley, OK, for Plaintiff.

Bradley Dean Brickell, Bruce R. Rooker, Christine R. Fritze, Mahaffey & Gore, P.C., Oklahoma City, OK, Evan B. Gatewood and Robert L. Magrini, Hayes & Magrini, Oklahoma City, OK, for defendants.

*ORDER*

CAUTHRON, District Judge.

Before the Court is the motion of Plaintiff Terry Matthews, Inc. ("TMI") for summary judgment on its claims against Defendant Amwest Surety Insurance Co. ("Amwest") and Defendant Amwest's motion for partial summary judgment on Plaintiff's Complaint. The issues raised by these motions and the responses thereto are as follows:

1. Whether TMI can recover against Amwest, the surety for C & L Contracting, Inc. ("C & L"), on bonds issued in accordance with Okla. Stat. tit. 42, § 147.1 for amounts owed under or for breach of subcontracts between TMI and C & L or whether TMI's claim is a "lien claim" only, pursuant to which TMI may only recover the reasonable value of material and labor furnished.

2. Whether TMI can establish that the written subcontracts with C & L were modi-

fied by executed oral agreements, and whether TMI can show fully executed oral agreements by clear and convincing evidence.

a. Whether TMI's knowledge of on-site superintendents' lack of authority to approve change orders or extras precludes enforcement of any fully executed oral agreements against C & L, precluding the surety's liability for charges for extra work performed by TMI.

3. Whether C & L received payment from General Mills for the extra work performed by TMI and, if not, whether TMI is by that fact precluded under the terms of the subcontracts from recovering payment for extra work.

a. Has Amwest shown that its or C & L's right to submit a claim to General Mills for payment of TMI's extra work has been prejudiced by TMI's failure to obtain written change orders and/or to submit timely claims to C & L?

b. Has Amwest waived or should it be precluded from asserting the defense that TMI failed to timely submit claims to C & L for payment of extra work to C & L's prejudice because it failed to assert this defense until it filed its motion for partial summary judgment on February 3, 1997?

4. Assuming that TMI is not precluded from recovering payment for extra work it performed and that TMI is limited to recovering the reasonable value of that work, whether genuine issues of material fact exist as the reasonable value of that extra work.

5. Whether TMI released all lienable claims for original and extra work against Red Lobster # 237 by the final release and lien waiver it executed on January 27, 1995.

a. Does the final release and lien waiver apply to labor and materials furnished by TMI after the date of the release and waiver?

b. Does the parol evidence rule bar TMI's evidence that neither C & L nor TMI intended that the final release and lien waiver operate to prevent TMI from being paid for extra work already performed or for work, including extra work, that TMI performed in the future?

c. . Did C & L and/or Amwest either abandon or waive its rights under the Final Release and Lien Waiver by allowing TMI to continue to work on Red Lobster # 237 after TMI executed the Final Release and Lien Waiver and/or by failing to plead the defense of release and failing to assert this defense until Amwest filed its motion for partial summary judgment on February 3, 1987?

6. Whether TMI has shown that it performed or substantially performed all of its obligations under the subcontracts with C & L (with or without modification), the amounts due under the subcontracts (with or without modification), and that C & L has failed to pay those amounts and/or whether C & L and therefore Amwest is entitled to offset(s) for expenses incurred by C & L to remedy defects in or to complete TMI's work under the subcontracts.

■■■ This action is, as Amwest seems to suggest, an action against the substituted security, i.e., the payment bond, "in the same manner as is required for foreclosure of a lien claim," and for the "principal, interest, court costs and attorney's fees to the extent they could be awarded in a lien foreclosure proceeding." Okla. Stat. tit. 42, § 147.1. But a lien claimant has a right to and must establish its substantive right to recover for the debt underlying the lien statement. *Cf. Cashway Lumber Co. v. Langston,* 479 P.2d 582, 585 (Okla.1970) (subcontractor proved proper perfection of its lien and substantive right to recover for the debt underlying the lien statement, thereby establishing the validity of its lien and its right to foreclose the lien, subject to a later proportional reduction in the amount of its judgment to the extent the total amount of all subcontractors' valid liens, and thereby the property owner's lien obligations to the subcontractors, exceed the contract price of the general contract); *Knapp v. Arko Interstate Electric Co.,* 448 P.2d 996, 1005–06 (Okla.1968) (subcontractor may obtain and enforce lien for amount due on subcontract plus amount which represents an amount charged to the contractor for work and materials not included in the subcontract). The Court is not persuaded by Defendant Amwest's unsupported assertion that TMI cannot recover against the bond amounts due pursuant to contracts but is

limited to recovery of the reasonable value of goods and services rendered.

No question exists but that under Oklahoma law,[1] a written contract may be altered or modified either "by a contract in writing, or by an executed oral agreement, and not otherwise." Okla. Stat. tit. 15, § 237; *Flour Mills of America, Inc. v. American Steel Building Co.,* 449 P.2d 861, 879–80 (Okla. 1968); *Kenison v. Baldwin,* 351 P.2d 307, 309 (Okla.1960). *See United States for the Use and Benefit of Moody v. American Insurance Co.,* 835 F.2d 745, 748–49 (10th Cir. 1987) (Miller Act case applying Oklahoma law concerning interpretation and modification of a contract to be performed in Oklahoma). This rule has been applied in cases involving construction contracts similar to those herein, requiring that extra work and changes be ordered in writing and that no claims for amounts based upon extra work or changes would be valid unless so ordered, in which the courts concluded that the contracts were modified when the owner or contractor requested additions and modifications to the contract and the contractor or subcontractor complied with those requests, resulting in a fully executed oral agreement modifying the written contract's term requiring written change orders. *See Flour Mills of America, Inc. v. American Steel Building Co.,* 449 P.2d at 877–78; *Kenison v. Baldwin,* 351 P.2d at 309; *Pfeiffer v. Peppers Refining Co.,* 197 Okla. 603, 173 P.2d 581 (1946); *United States for the Use and Benefit of Moody v. American Insurance Co.,* 835 F.2d at 748–49. The evidence is undisputed that C & L's on-site superintendents for both construction projects requested TMI to perform work beyond the scope of the work required by

TMI's subcontracts with C & L, which work was not necessitated by TMI, and that those on-site superintendents agreed to specific amounts of payment for some items of extra work and to an hourly rate for other items of extra work. It may reasonably be inferred that as to extra work requested or directed by C & L's on-site superintendents for which no specific price was agreed upon that an implied agreement existed that C & L would pay TMI the reasonable value of such services and associated materials. It is also undisputed that TMI always requested written change orders before doing the extra work requested by C & L's on-site superintendents but that TMI never received most of the change orders it requested. TMI did a lot of work on the two projects without the change orders in order to move the projects along and because it "would always be assured that a change order would be forthcoming." Deposition of Don Franklin at p. 79. Reasonable jurors could find from this evidence the existence of executed oral agreements to modify the subcontracts so as to require TMI to do additional work at agreed upon prices, hourly rates or for the reasonable value of such work and to modify the subcontracts' requirement of written changes orders by clear and convincing evidence,[2] provided that the on-site superintendents had authority to authorize the extra work and changes in the scope of TMI's work under the subcontracts or their actions were ratified by C & L. *See Flour Mills of America v. American Steel Building Co.,* 449 P.2d at 877–78. Defendant Amwest asserts that under the terms of the subcontracts, only the project manager could approve extras, citing

1. The subcontracts between TMI and C & L provide at paragraph 22(d) that they be "construed under the law of the State of Texas...." Although Defendant Amwest indicated in its Answer that Texas law may apply herein, both TMI and Amwest rely exclusively on Oklahoma law in their briefs supporting and opposing these summary judgment motions. Accordingly, the Court also applies Oklahoma law. However, Texas law on all of the issues raised is substantially identical to Oklahoma law.

2. Defendant Amwest asserts that the "extra work doctrine" set forth in *Brant Construction Co. v. Metropolitan Water Reclamation Dist.,* 967 F.2d 244, 246 (7th Cir.1992) and recognized in *Green*

*Construction Co. v. Kansas Power & Light Co.,* 1 F.3d 1005 (10th Cir.1993) applies. But in *Brant* the Seventh Circuit applied Illinois law, including its "extra work doctrine," and in *Green* the Tenth Circuit, applying Kansas law, looked to the decisions of "other state courts as well as federal decisions," in the absence of Kansas cases on point. *Green Construction Co. v. Kansas Power & Light Co.,* 1 F.3d at 1008. Apparently there were no Kansas cases dealing with recovery of extra compensation for work within or without the scope of the original contract. Defendant Amwest has not shown that the "extra work doctrine" applied in *Brant* has been or would be adopted by the Oklahoma Supreme Court.

the following provision of Exhibit A, entitled "Scope of Work," of each of the subcontracts:

> 10) All change orders must be signed and priced by the On Site Superintendent before the change orders will be accepted and/or paid. Note: Project Manager has final approval of all change orders and extras.
>
> Exhibit "A" to Subcontracts at ¶ 10

Defendant Amwest contends that TMI had actual notice of limitations on each on-site superintendent's authority to approve change orders by virtue of this provision and that TMI also had actual knowledge of this limitation inasmuch as TMI admits that Ron Holmes, on-site superintendent for C & L, at some point told Terry Matthews, TMI's principal, that he did not have authority to approve change orders. *See* Plaintiff's Answers to Interrogatory No. 4. It asserts that TMI cannot rely on the apparent or implied authority of C & L's on-site superintendents to orally authorize changes and extra work because TMI had actual knowledge that they did not have authority to order or approve such changes and extra work. *See* Amwest's Objection to Plaintiff's Motion for Summary Judgment at pp. 12–13, citing *DeBoer Construction, Inc. v. Reliance Insurance Co.*, 540 F.2d 486 (10th Cir.1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977); *Truscon Steel Co. v. Cooke*, 98 F.2d 905 (10th Cir.1938); *Federal Deposit Insurance Corp. v. Grim*, 184 Okla. 275, 86 P.2d 774 (1938). However, Exhibit "A" to each subcontract, entitled "Scope of Work" and incorporated by reference in the subcontracts "for all intents and purposes," Subcontracts at ¶ 2, also provides as follows:

> 11) Any changes not listed in plans, scope of work, prebid, etc. will *not* be accepted unless signed by C & L Contracting's Superintendent or Owner (this includes any and all verbal agreements).
>
> Exhibit "A" to Subcontracts at ¶ 11.

The Court concludes that when paragraphs 10 and 11 of Exhibit "A" are considered together, and in conjunction with Oklahoma's rule that a written contract may be modified by an executed oral agreement, *see supra*, an ambiguity exists as to whether C & L's on-site superintendents had authority to authorize changes and extra work not included in the plans, scope of work, prebid, etc. and that a genuine issue of material fact thus exists as to whether C & L's superintendents had authority to order or approve changes and extra work and as to whether these provisions provided actual notice to TMI that C & L's superintendents did not have such authority. Moreover, the Court further finds that genuine issues of material fact exist as to whether C & L's project manager and/or its owner knew or should have known of the existence of C & L's on-site superintendents' numerous oral requests that TMI perform extra work or work outside the scope of TMI's subcontracts and of TMI's performance of such work and thus as to whether C & L acquiesced in and ratified its superintendents' conduct or is estopped to deny liability for same. *See e.g., Bank of Oklahoma, N.A. v. Briscoe*, 911 P.2d 311, 317 (Okla.App.1995) (citing *Mertz v. Owen*, 191 Okla. 77, 126 P.2d 720, 729–30 (1942)). *See also Clark v. Brien*, 59 F.3d 1082, 1087 & 1088 (10th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996).

■ Evidence cited by Amwest to support its allegedly uncontroverted fact that "C & L has not been paid by General Mills for most if not all of the alleged extras," Brief in Support of Amwest's Motion for Partial Summary Judgment at p. 4, ¶ 15, does not support that alleged fact. Defendant Amwest has failed to show the non-existence of a genuine factual issue as to whether C & L received payment from General Mills for the extra work performed by TMI. Moreover, it may reasonably be inferred from evidence submitted by TMI that TMI performed work which C & L had retained for itself and which C & L did not in fact perform that C & L received payment therefor from General Mills. Furthermore, Defendant Amwest has not shown that TMI's "untimely" requests or claims for payment for the extra work have prejudiced C & L's right to submit a claim or receive payment from General Mills therefor, as Defendant Amwest suggests. Finally, in any event, the Court agrees with Plaintiff that Defendant Amwest has waived any defense predicated on paragraph 7 of the subcontracts and the alleged non-payment by General Mills to C & L for TMI's extra work by failing to assert General Mills' payment as a condition precedent to C & L's obligations

to pay TMI under its subcontracts with TMI as a defense in the Answer filed by Amwest and C & L, in the Status Report or at any time prior to filing its motion for partial summary judgment. The Court concludes that to permit Defendant Amwest to assert this defense for the first time at this juncture would unfairly prejudice Plaintiff TMI. This action was filed on November 29, 1995. The status report was filed on February 26, 1996. The deadline for completion of discovery was originally October 30, 1996, and the case was originally set on the January 1997 jury trial docket. Pursuant to an agreement of the parties, the Court extended the deadline for completing discovery until February 14, 1997, and reset the case on the March 1997 jury trial docket. Plaintiff did not have notice of this defense in time to question the individuals whose depositions had been taken concerning the timeliness of Plaintiff's claims for payment for extra work, whether C & L had received payment from General Mills for the extra work and whether C & L even submitted claims to General Mills for the extra work.

With respect to the fourth issue, TMI is limited to recovering the reasonable value of that extra work for which a C & L superintendent and TMI did not agree upon a price. However, Plaintiff has submitted evidence that the amounts of the charges for extra work performed by TMI for which no specific amounts were agreed upon by a C & L superintendent and TMI "are fair and reasonable for the work done under the circumstances." Affidavits of Mike Cumby, Joe Henry and Ron Holmes Exhibits "D", "E", & "F" to Plaintiff's Motion for Summary Judgment at ¶ 5. This evidence, in the absence of any evidence controverting the reasonableness of the charges or the reasonable value of the work, is adequate to establish same. Defendant Amwest has failed to submit any evidence that raises a genuine issue of material fact as to the reasonableness of TMI's charges for the extra work.

It is undisputed that on or about January 27, 1995, C & L paid TMI $52,250; that that amount was the contract price which C & L agreed to pay TMI for performance of its obligations under a subcontract with C & L for work on Red Lobster No. 237; and that the check stated on its face "Red Lobster # 237—Job 240 Contract Paid in Full." It is also undisputed that on or about January 27, 1995, TMI by its President, Terry Matthews, executed a "Final Release and Waiver of Lien" in consideration of receipt of the sum of $52,250. The "Final Release and Waiver of Lien" states as follows:

> The undersigned, for and in consideration of the sum of $52,250.00 and other good and valuable consideration, receipt of which is hereby acknowledged, does hereby waive, release, remise, relinquish and declare fully satisfied any and all claims, or causes of action against General Mills Restaurants, Inc. and C & L Contracting, Inc. (Contractor) and any and all rights to claim any lien or liens for work done or materials furnished or any kind or class of lien whatsoever on the real property described as follows: Red Lobster # 237—4242 Northwest Highway—Oklahoma City, OK, and acknowledges and represents that appropriate releases have been obtained from any subcontractor(s) and materialmen involved; and that said subcontractor(s) and/or materialmen have been paid in full for all materials and supplies in connection therewith. The undersigned has executed this Final Release and Waiver of Lien voluntarily and with full knowledge of its rights under the laws of the State of Texas.
>
> Final Release and Waiver of Lien, Exhibit "H" to Brief in Support of Amwest Surety Insurance Company's Motion for Partial Summary Judgment.

The Court agrees with Plaintiff TMI that the release and waiver does not by its terms purport to waive, relinquish or release any claims or causes of action which TMI might have against C & L and General Mills which accrued after the date of the release or any right to claim a lien for work done or materials furnished after the date of the release, i.e., after January 27, 1995. Plaintiff TMI has submitted evidence that it continued to work at the two job sites until well into March 1995 and that many of the items of extra work were done by TMI after the Final Release and Waiver of Lien was signed. Accordingly, at a minimum, genuine issues of material fact exist as to which items

of extra work for which TMI may not recover by virtue of having executed the final release and lien waiver. TMI's execution of the Final Release and Waiver of Lien does not as a matter of law prevent TMI from establishing the validity of its lien and its substantive right to recover with respect to extra work and materials furnished by TMI to Red Lobster No. 237 after January 27, 1995.

With regard to TMI's receipt of payment January 27, 1995, and execution of the Final Release and Waiver of Lien, Terry Matthews,[3] owner and president of TMI, attests as follows:

> When I submitted a draw request for 50% payment on each of the two Red Lobsters, Betty Cumby told me that it would be easier for her "bookkeepingwise" to pay me for 100% of one store rather than 50% of both stores. Since the amount of money I would receive under either situation was approximately the same, I agreed to her proposal. She then told me I would have to sign the document which is reproduced as Exhibit H of Amwest's brief in support of its motion for partial summary judgment so that C & L could be paid by General Mills.
>
> I did not believe that what I was signing would preclude me from recovering for extras provided on that restaurant. It never entered my mind that anyone would even make such an argument. My understanding of the document was that it was merely something General Mills was requiring from C & L.

Affidavit of Terry Matthews at ¶¶ 2 & 3. TMI points out that the deposition testimony of Betty Cumby, C & L owner, secretary-treasurer and bookkeeper, corroborates Terry Matthews' statements. She testified that when Terry Matthews requested payment of 50 percent on each store she did not pay him 50 percent on each store but "paid him all of one store—his contract amount on one store" because she "figured that equaled out to 50 percent of each store to help him." Deposition of Betty Cumby (Exhibit "B" to Plaintiff's Brief in Opposition to Defendant Amwest's Motion for Summary Judgment) at p. 16. She further testified that when Terry

came to pick up the check for 100 percent of the contract price on one store she asked him to sign a final lien waiver because that's what's usually asked for or standard practice when final payment is made, see id., at p. 7, but she admitted that it was not her intent by asking Matthews to sign the Final Release and Waiver of Lien that Terry Matthews would be prevented from being paid or would not be paid or would not be paid for extras that had been performed or might be performed in the future. Id. at pp. 17–19.

Based upon this evidence, TMI argues that the parties were in agreement about what they intended but their written agreement, i.e., the release, failed to express their actual intent; and that the parol evidence rule, Okla. Stat. tit. 15, § 137, does not apply herein because it applies only in the absence of fraud, accident or mistake.

TMI has not alleged a claim for reformation or rescission herein. However, TMI appears to be asserting that the release and waiver is subject to reformation or cancellation defensively, in response to Amwest's assertion of the affirmative defense of release which it has not heretofore alleged or asserted. See Answer and Status Report. Where a contract fails to express the real intention of the parties as a result of a mutual mistake, including a mutual mistake as to the legal meaning and operation of the terms of the contract, equitable relief in the form of reformation or cancellation may be obtained. See Crockett v. McKenzie, 867 P.2d 463, 468 (Okla.1994). See also Okla. Stat. tit. 15, § 156; Thompson v. Estate of Coffield, 894 P.2d 1065, 1067 (Okla.1995); Exxon Corp. v. Gann, 21 F.3d 1002, 1005 (10th Cir.1994). As TMI suggests, the parol evidence rule has no application to evidence introduced in actions for reformation for the purpose of establishing a mutual mistake of the parties at the time of execution of the contract. Thompson v. Estate of Coffield, 894 P.2d at 1068; Crockett v. McKenzie, 867 P.2d 463; Fabbro v. Reese, 206 Okla. 655, 246 P.2d 324, 325 (1952). The Court, however, finds it unnecessary or premature to address the

---

3. The Affidavit is signed by "Terri Matthews" as owner and president of "Terri Matthews, Inc.," but to be consistent with all pleadings and briefs

filed in this case, the Court has employed the spelling of Mr. Matthews' and his company's names used in the style of this case.

issue of whether TMI has submitted evidence from which the Court could find that it is entitled to reformation or cancellation of the release because Defendant Amwest has not submitted evidence showing, and the record herein does not disclose, that extra work and materials furnished by TMI on Red Lobster No. 237 for which TMI seeks recovery herein were in fact furnished prior to January 27, 1995.

Since the Final Release and Waiver of Lien does not, by its terms, prevent TMI from asserting claims or obtaining a lien for work and material furnished by TMI to Red Lobster No. 237 after the date of its execution, the Court fails to discern how C & L could have abandoned or waived rights acquired under the release and waiver by permitting TMI to furnish work and materials to Red Lobster No. 237 after the date of the release and waiver.

The affirmative defense of release must be pleaded or it is deemed waived. F.R.Civ.P. 8(C); *Renfro v. City of Emporia, Kansas,* 948 F.2d 1529, 1539 (10th Cir.1991), *cert. denied,* 503 U.S. 915, 112 S.Ct. 1310, 117 L.Ed.2d 510 (1992). Defendant Amwest did not plead this defense in its Answer or include it in the Status Report. But before deeming the defense waived, the Court considers the following. Defendant has now included this defense in the Final Pretrial Order, although the pretrial order was not filed until after TMI objected to Amwest's belated assertion of this defense by motion for partial summary judgment. Had Defendant moved for leave to amend its Answer to assert this omitted affirmative defense the Court would be required to apply the standard that leave "shall be freely given when justice so requires." F.R.Civ.P. 15(a). And the Final Release and Waiver of Lien were to be introduced at trial without objection, the Court would have been required to treat the pleadings as if this defense had been raised. F.R.Civ.P. 15(b).

The Court observes that Defendant Amwest did plead in its Answer the affirmative defense of accord and satisfaction which, in the context of this case, was factually related,

and may have been sufficient to put TMI on notice that Defendant was relying upon the release as a defense. Moreover, it appears from the deposition questions to and testimony of Betty Cumby on May 22, 1996, which TMI submitted, that TMI may have had notice that Defendant Amwest intended to assert the defense of release and an opportunity to prepare to meet that defense and/or that TMI has not been prejudiced by Amwest's failure to earlier plead or raise this defense. But since there is no evidence before the Court from which it can discern whether any of the charges for which TMI seeks recovery herein were for extra work or materials furnished prior to the date of the Final Release and Waiver of Lien, i.e. that the release would preclude recovery for certain charges, the Court will defer ruling on this issue until immediately before trial begins,[4] at which time the Court will hear oral arguments directed to this issue. Defendant Amwest should be prepared to state why it failed to allege this affirmative defense in its Answer. The parties should be prepared to address when TMI first had notice or should have known that Amwest was relying upon this defense, whether TMI has had ample opportunity to and has conducted discovery directed to the defense of release and related issues, e.g., reformation of the release, and whether TMI has been prejudiced by Amwest's failure to plead and/or earlier assert this defense.

█ As should be clear from the foregoing, Plaintiff TMI is not entitled to summary judgment on its claim based on extra work and materials furnished. Although the record is far from clear, it appears that genuine issues of material fact exist as to whether Plaintiff TMI performed all of its obligations under its subcontract with C & L relating to Red Lobster No. 293 and as to whether Amwest is entitled to offset(s) for costs and expenses incurred by C & L to complete or remedy defects in TMI's work on one or both of the Red Lobster remodeling projects. The motion of Plaintiff Terry Matthews, Inc. for summary judgment is denied. The mo-

---

4. Trial is scheduled to begin on Monday, March 10, 1997. On or before that date the parties are to file proposed jury instructions which contain clear and concise statements of the law applica-

ble to all of the parties' claims and defenses and the issues addressed herein, if they have not already done so.

tion of Defendant Amwest Surety Insurance Co. for partial summary judgment is also denied.

IT IS SO ORDERED.